**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0228n.06

**No. 09-1472**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| PHILLIP DEMETRIUS REYNOLDS-BEY, | ) | |
| | ) | **FILED** |
| Plaintiff - Appellant, | ) | **Apr 13, 2011** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| SUSANNE E. HARRIS-SPICER, et al, | ) | |
| | ) | |
| Defendants - Appellees. | ) | |
| _____ | ) | |

Before: DAUGHTREY, CLAY, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** *Pro se* Plaintiff-Appellant Phillip Demetrius Reynolds-Bey challenges the district court's grant of summary judgment to Defendants, all employees of the Michigan Department of Corrections (MDOC). Reynolds-Bey alleged that Defendants retaliated against him for his First Amendment-protected activity while he was a state prisoner housed at MDOC facilities. The district court granted summary judgment to all Defendants except Kingsbury on the basis that Reynolds-Bey failed to exhaust administrative remedies and determined that one defendant was additionally entitled to absolute judicial immunity. The district court granted summary judgment to Kingsbury on the basis that Reynolds-Bey failed to provide adequate support of a cognizable retaliation claim. We affirm in part and reverse and remand in part.

**I.**

At the times relevant to this suit, Reynolds-Bey was a state prisoner in Michigan housed in several state correctional facilities operated by the MDOC. On December 22, 2005, he filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. The district court later granted him leave to file an amended complaint. A description of the facts underlying his complaint follows.

A. ALLEGED RETALIATION BY KINGSBURY

In May 2004, Reynolds-Bey was transferred from the Chippewa Correctional Facility in Kincheloe, Michigan, to the Boyer Road Correctional Facility in Carson City, Michigan. Reynolds-Bey's amended complaint alleges that in May 2004, while exiting the prison dining hall, he was stopped by Defendant Kingsbury, a guard at the Boyer Road Facility, who recognized Reynolds-Bey from the Chippewa Facility where Kingsbury had previously worked. Reynolds-Bey further alleges that on June 21, 2004, Kingsbury stopped him, referred to a 2001 order of a magistrate judge in the Western District of Michigan in a case filed by Reynolds-Bey that mentioned Kingsbury, and then told Reynolds-Bey that "Niggers and litigants like you will always stay on my list and you can write that in any grievance or tell the court that." Kingsbury also subjected Reynolds-Bey to what Reynolds-Bey termed a "harassing body search."

By way of background, Reynolds-Bey did file a lawsuit while he was an inmate at the Chippewa Correctional Facility. *See Phillip Demetrius Reynolds v. N. Smith, et al.*, No. 2:01-cv-43 (W.D. Mich. filed Mar. 16, 2001). Reynolds-Bey named nine defendants in that suit; Kingsbury was not one of them. The only mention of Kingsbury is on the second page of a report and recommendation filed by a magistrate judge, which discusses Reynolds-Bey's allegation that on January 17, 2001, N. Smith called Kingsbury via walkie-talkie, and that "Smith was later observed

2

with Botos and Kingsberry [sic] in possession of the plaintiff's legal transcripts in the counselor's office and placing them in the Guard Desk." (*Id.* at 2.) On November 8, 2001 the district judge dismissed all but four defendants. The district court dismissed the remaining defendants on August 26, 2003. This Court affirmed the district court's judgment on April 8, 2004. *See Reynolds v. Smith*, No. 03-2201 (6th Cir. Apr. 8, 2004).

On May 17, 2004, prior to the incident involving the racial epithet, Reynolds-Bey filed a grievance with prison officials "ABOUT BEING AT SAME FACILITY AS STAFF MEMBER WHOM IS PART OF LAWSUIT." (Grievance No. OTF-04-05-0275-24A.) The grievance requested that Reynolds-Bey be transferred to another facility because he was "fearful" of Kingsbury. His grievance was denied.

On June 21, 2004, Reynolds-Bey filed a new grievance regarding threats made by Kingsbury. (*See* Grievance No. OTF-04-06-0361-18B.) Reynolds-Bey alleged that Kingsbury had yelled at him, forced him to empty his pockets, and made an "implied threat." In relevant part, the grievance reads as follows:

> This Citizen on June 21, 2004, while proceeding to chow, once he entered into the chow hall – Guard KINGSBERRY [sic] confronted this American by yelling in this Citizen ear from less than 2 feet from behind. . . . Subsequently, when Mr. Reynolds turned around, – KINGSBERRY [sic] was speaking with an Unknown John Doe Guard and commenting: "Reynolds was the one." When Mr. Reynolds was leaving from the right side of the chow hall, KINGSBERRY [sic] existed [sic] from the leftside [sic] and intercepted Reynolds in the front area of chow hall. As a result, KINGSBERRY [sic] was successful in intercepting Reynolds and ordered him to come to him and empty his pockets. Mr. Reynolds asked prisoner SANDER'S [sic] whom was standing beside him to observe what happened because Reynolds told Mr. Sanders, that KINGSBERRY [sic] was one of the GUARDS at [Chippewa Correctional Facility] involved in litigation filed in federal court, along with a variety of prison employees in 2001.

3

> When this Citizen proceeded to the front of the chow hall side by the blue mail box, KINGSBERRY [sic] and a John Doe Guard [were] there. Reynolds emptied his pockets for a shakedown which KINGSBERRY [sic] ordered but contrary to a shakedown taking place. C/O KINGSBERRY [sic] proceeded to question his name and whether he understood. This was strange but Mr. Reynolds understood the implied threat, along with Mr. Sander's [sic] witnessing the same. Furthermore, when KINGSBERRY [sic] grabbed my wallet off the mail box, he removed my I'D and stated 'O['] and made hand jesters [sic] in front of me. He said something to the other Guard and I was ordered from the area. When I walked away, KINGSBERRY [sic] was speaking in quiet tone with this other guard about Reynolds.

(*Id.*)[1] According to the amended complaint, this is the incident during which Kingsbury used the racial slur. This grievance was also denied.

## B. COMPLAINTS ABOUT HEARING OFFICER HARRIS-SPICER

On July 1, 2004, Reynolds-Bey was written up in a Major Misconduct Report for possessing a legal document that could be used to "deceive the [prison] into believing that he had a legitimate court date when he did not." (Major Misconduct Hr'g Report, Pro Se App., App. 2.) In the Hearing Report finding him guilty of the charge, the hearing officer, Defendant Susanne Harris-Spicer, wrote that a prison staff member had told her "that the Inspector told her that he felt the prisoner was trying to escape." (*Id.*) According to Reynolds-Bey, Harris-Spicer also made oral comments during the hearing alleging that Reynolds-Bey's mother and brothers "intended to break into the prison and assist in Plaintiff's escape" and telling Reynolds-Bey to "stop writing federal judges and the Governor because it was intimidating local prison officials and that there was no purpose for a

---

[1]Reynolds-Bey also addressed this incident in his Step III appeal of the first grievance, writing that on "June 21, 2004 time 6:00-6:05 p.m., G[u]ard KINGSBURY stopped twice and threatened this American Citizen. A separate grievance is being filed but I wanted to include this in the record . . . . Mr. Reynolds seeks to [be] placed in protection immediately." (Grievance No. OTF-04-05-0275-24A.)

prisoner to complain about his living conditions." (Am. Compl. ¶¶ 31-32.) Reynolds-Bey complained about Harris-Spicer's comments to prison officials, who investigated and informed him that they could "find no evidence . . . that either you or your family members are engaged in any escape conspiracy." (Mem. from Kurt Jones, Warden, to Phillip Reynolds (Sept. 7, 2004), Pro Se App., App. 3.) In his amended complaint, Reynolds-Bey alleged that Harris-Spicer and other prison employees "deliberately falsified Plaintiff's involvement in a crime to escape from the prison" in retaliation for Reynolds-Bey's First Amendment-protected activity of "engaging in verbal and written communications with public officials." (Am. Compl. ¶ 59.)

> C.   ADDITIONAL GRIEVANCES FILED BY REYNOLDS-BEY AND MAJOR MISCONDUCT REPORTS ISSUED TO REYNOLDS-BEY

As described in detail in the magistrate judge's report and recommendation (R&R), Reynolds-Bey filed six grievances in 2005 regarding a series of events that he alleges constituted retaliation for filing grievances and otherwise petitioning prison officials and others.[2] Each of the six grievances was untimely filed and rejected by prison officials. The magistrate judge found that the claims arising out of these grievances were therefore not exhausted and, thus, not properly before the district court.

---

[2]The relevant grievances comprise:
(1) OTF-05-02-00090-28E (filed Feb. 8, 2005);
(2) OTF 05-02-00091-28E (filed Feb. 8, 2005);
(3) OTF-05-02-00092-28E (filed Feb. 8, 2005);
(4) OTF 05-02-00093-28E (filed Feb. 8, 2005);
(5) OTF 05-03-00153-28E (filed Mar. 3, 2005); and
(6) OTF 05-06-00397-28E (filed June 27, 2005).

In 2004 and 2005, subsequent to the hearing in which Harris-Spicer referenced Reynolds-Bey's supposed escape plot, prison officials filed at least six additional major misconduct reports against Reynolds-Bey:

1) Insolence, September 2, 2004, written by J. Dunigan on December 1, 2004. (Pro Se App., App. 12.) Reynolds-Bey found not guilty by Hearing Officer Gary Kuiper on December 16, 2004. (*Id.* at App. 13.)

2) Unauthorized Occupation of Cell or Room, September 14, 2004, written by J. Dunigan. (*Id.* at App. 7.) Reynolds-Bey found not guilty by Hearing Officer Harris-Spicer on October 5, 2004. (*Id.* at App. 8.)

3) Disobeying a Direct Order, December 1, 2004, written by Beecher. (*Id.* at App. 14.) Reynolds-Bey avers that no hearing was conducted on this charge.

4) Disobeying a Direct Order, July 22, 2005, written by C. White. (*Id.* at App. 15.) Reynolds-Bey found not guilty by Hearing Officer Baerwalde on July 29, 2005. (*Id.* at App. 16.)

5) Gambling/Possession of Gambling Paraphenalia [sic], October 24, 2005, written by M. Clark. (*Id.* at App. 17.) Major misconduct report dismissed by Hearing Officer Baerwalde on November 8, 2005. (*Id.* at App. 18.)

6) Disobeying a Direct Order, December 13, 2005, written by Wingard. (*Id.* at App. 20.) Reynolds-Bey found not guilty by Hearing Officer Baerwalde on December 21, 2005. (*Id.* at App. 21.)

Reynolds-Bey's amended complaint refers to three of these major misconduct reports. His fifth cause of action in the amended complaint alleges, *inter alia*, that he "suffered adverse action

by defendant Dunigan when he manufactured a prison misconduct on September 14, 2004, in response to Plaintiff complaining about staff corruption." (Am. Compl. ¶ 65(d).) His sixth cause of action alleges that "Plaintiff suffered adverse action by Defendant[s] DUNIGAN, BEECHER, MALLORY, KILLOUGH, SMITH, GRAVELLE, BELONGA, BOYNTON and JONES when they issued Plaintiff two major misconduct (December 2004) for Plaintiff and his mother's litigation activities in a federal § 1983 civil rights lawsuit." (*Id.* ¶ 67(b).) This allegation appears to refer to the report for insolence on September 2, 2004, which was written on December 1, 2004, and the December 1, 2004, report for disobeying a direct order. The amended complaint does not mention the three misconduct reports from 2005.

Reynolds-Bey's amended complaint named sixteen defendants, all MDOC employees. On April 8, 2008, the magistrate judge issued a R&R calling for dismissal of all claims against all defendants except Kingsbury on the grounds that 1) the claims were not exhausted as required by the Prison Litigation Reform Act; 2) Defendant Harris-Spicer was entitled to absolute judicial immunity; and 3) Count 2 of Reynolds-Bey's amended complaint, concerning the guilty finding for the July 21, 2004, misconduct report for possession of a forged document, is "noncognizable under § 1983 because a ruling on the retaliation claims would, if established, necessarily imply the invalidity of his disciplinary conviction" in violation of *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), and *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The district court adopted the R&R on September 30, 2008, and granted the motions to dismiss filed by all defendants except Kingsbury.

On October 28, 2008, the magistrate judge recommended that the district court grant summary judgment to Kingsbury on the remaining First Amendment retaliation claim. The district

court adopted the recommendation and granted summary judgment in favor of Kingsbury on March 6, 2009. Reynolds-Bey filed a timely *pro se* appeal. The Michigan Department of Attorney General, acting as counsel for Defendants, opted to rely on its filings below instead of submitting a brief on appeal.

## II

### A. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*.[3] *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, 'show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). This Court must draw all reasonable inferences and view all evidence in favor of the non-moving party. *Id.*; *Wuliger v. Manufacturers Life Ins. Co. (USA)*, 567 F.3d 787, 792 (6th Cir. 2009).

Because Reynolds-Bey is a *pro se* litigant, we liberally construe his filings. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."); *see also*

---

[3]Defendants filed a motion to dismiss for failure to exhaust administrative remedies on May 29, 2007. Because they submitted exhibits with that motion and because Reynolds-Bey attached evidentiary material to his amended complaint, the district court converted the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Thus, when the district court granted Defendants' motions to dismiss for Reynolds-Bey's failure to exhaust, it was actually granting summary judgment.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers").

### B. ABSOLUTE IMMUNITY

On appeal, Reynolds-Bey challenges the district court's decision that Hearing Officer Harris-Spicer is entitled to absolute judicial immunity by alleging that Harris-Spicer was acting without jurisdiction when she made the allegation that he was "trying to escape." We disagree.

In *Shelly v. Johnson*, 849 F.2d 228, 229-30 (6th Cir. 1988) (per curiam), this Court held that Michigan prison hearing officers are entitled to "absolute immunity from liability with respect to their judicial acts." The doctrine of judicial immunity protects judicial officers from suits seeking money damages and applies even in the face of "allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). Judicial immunity is overcome in only two circumstances: "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12 (citations omitted).

Here, Harris-Spicer was clearly acting in her "judicial" capacity–presiding over a hearing and authoring a hearing report. The Supreme Court has held that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (alteration in original)). Although Reynolds-Bey alleges that prison officials believed Harris-Spicer was "acting on her own"

when she alleged that Reynolds-Bey was trying to escape,[4] the record indicates that Harris-Spicer was acting in her official role as a hearing officer, and was well within her jurisdiction to make a determination on the Major Misconduct Report and to include in her hearing report any allegations or factual findings she thought relevant. *See* MDOC Policy Directive 03.03.105, ¶¶ Z, BB, DD (effective date Aug. 16, 2010), *available at* http://www.michigan.gov/documents/corrections/0303105_330455_7.pdf (discussing jurisdiction and role of hearing officer).

Even if Harris-Spicer's allegation was made in bad faith, she is still entitled to absolute immunity. *See Mireles*, 502 U.S. at 11; *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly . . . ."). The lack-of-jurisdiction exception to judicial immunity is narrow, and Reynolds-Bey fails to demonstrate that Harris-Spicer acted in the "clear absence of all jurisdiction" here. *Stump*, 435 U.S. at 357; *see also id.* at 356 ("[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."). Therefore, Harris-Spicer is entitled to absolute immunity from suit. Moreover, the claim against Harris-Spicer is not properly exhausted because the grievance concerning her actions was untimely.

The district court granted summary judgment to Harris-Spicer on the alternative grounds that Reynolds-Bey's claim against her was unexhausted, and that she is entitled to absolute immunity.

---

[4]In fact, prison officials stated to Reynolds-Bey that they believed that "every possibility exists that this was a misunderstanding on the part of the Hearings Officer when she typed this in your report." (Mem. from Kurt Jones, Warden, to Phillip Reynolds (Sept. 30, 2004), R. 1-2, at 4.)

The magistrate judge and the district court addressed the latter ground for the holding *sua sponte*:

Absolute immunity was not argued in Defendants' motion for summary judgment. A district court may, in the exercise of its discretion, grant summary judgment *sua sponte* in "certain limited circumstances," so long as the losing party is "afforded notice and reasonable opportunity to respond to all the issues to be considered by the court." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (internal quotation marks omitted). Here, the magistrate judge did not provide Reynolds-Bey with notice, and Reynolds-Bey objected on that basis in the district court, while also including a cursory argument on the merits.

We need not consider the propriety of the grant of summary judgment, however, because Harris-Spicer is nonetheless entitled to absolute immunity on the merits. We therefore dismiss the claims against Harris-Spicer pursuant to 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2) provides that in civil actions brought by prisoners, the court "shall dismiss the case at any time if the court determines that . . . the action or appeal-- (i) is frivolous . . . ; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) & (e)(2)(B) (emphasis added). Harris-Spicer is entitled to absolute immunity, and thus Reynolds-Bey"s claim against her must be dismissed. *See Carlton v. Baird*, 72 F. App'x 367, 368 (6th Cir. 2003) ("[W]e conclude that the district court was required to dismiss this complaint because it sought monetary relief from a defendant who is entitled to absolute immunity. 28 U.S.C. §§ 1915(e)(2)(B)(iii) . . . . Judges are absolutely immune from suit for monetary damages

11

. . . . and the absolute immunity of the defendant therefore compelled dismissal." (some internal citations omitted)).

## C. PLRA EXHAUSTION

Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, prisoners seeking to bring § 1983 actions with respect to prison conditions must first exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007). To satisfy this exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The PLRA requires "proper exhaustion," meaning that plaintiffs must timely pursue available administrative remedies. *Woodford*, 548 U.S. at 93. Failure to file an administrative grievance within proper time limits precludes proper exhaustion and thus bars the claim in federal court. *Id.* The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences," whether for broad prison conditions suits or for individual allegations of abuse. *Porter v. Nussle*, 534 U.S. 516, 520 (2002). When a prisoner's complaint contains a combination of exhausted and unexhausted claims, courts are to dismiss the unexhausted claims but retain and address the exhausted claims. *Jones*, 549 U.S. at 220-24.

MDOC Policy Directive 03.02.130 (effective date Dec. 19, 2003) provides the applicable grievance procedures for MDOC prisoners.[5] The Policy Directive details four steps that inmates

---

[5]Although Policy Directive 03.02.130 has subsequently been amended, the version of the policy adopted in December 2003 applied at all times relevant to Reynolds-Bey's claims.

must undertake in order to exhaust their complaints properly. First, a grievant must attempt to resolve the issue orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. Policy Directive 03.02.130, ¶ R. Second, the grievant must file a "Step I grievance" within five days of the attempted oral resolution, which is assigned to an appropriate respondent within the MDOC system. *Id.* ¶¶ R, X. If the prisoner is not satisfied with the response to the Step I grievance, he or she may appeal to Step II by requesting an appeal form within five days after receiving the Step I response and then must file the appeal within five days of receiving the form. *Id.* ¶ DD. The Step II respondent is designated by policy (e.g., the warden of the facility for many grievances). *Id.* ¶ FF. If the prisoner is dissatisfied with the response at Step II, he or she may file a Step III grievance within ten days after receiving the Step II response. *Id.* ¶ HH. The Step III respondent is the Director of the MDOC Prisoner Affairs Section. *Id.* ¶ II. Grievances alleging "racial or ethnic discrimination or staff brutality or corruption" may be filed directly to Step III. *Id.* ¶ S.

Policy Directive 03.02.130 provides instructions regarding the contents of prisoner grievances. It directs that "[i]nformation provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* ¶ T. Policy Directive 03.02.130 also provides a list of "non-grievable issues," including "[d]ecisions made in hearings conducted by hearing officers." *Id.* ¶ F(1). Prisoners may seek rehearing of such decisions, but they may not file independent grievances regarding hearing outcomes. *See* Policy Directive 03.03.105, ¶ BBB (effective date Aug. 16, 2010), *available at*

http://www.michigan.gov/documents/corrections/0303105_330455_7.pdf (describing procedures

for requesting rehearing of results of major misconduct hearing).[6]

Reynolds-Bey argues that prison officials filed a series of baseless misconduct reports against

him in retaliation for his First Amendment-protected activity, but that he was not permitted to appeal

or file grievances concerning the misconduct hearings after each charge resulted in a not guilty

finding or other dismissal. He thus argues that his grievances should be deemed properly exhausted.

We agree with the district court that his argument that he should have been able to appeal the "not

guilty" findings is without merit because once Reynolds-Bey "won, . . . there was nothing for him

to appeal." (Order 3, R. 101.) It is also correct that the outcomes of misconduct hearings are non-

grievable under MDOC policy. However, Reynolds-Bey does not actually challenge the outcomes

of the major-misconduct hearings; he was found not guilty or charges were dismissed at each of the

hearings at issue here. Rather, he argues that the *filing* of meritless misconduct reports by prison

staff constituted unlawful retaliation. As distinct from the outcomes of misconduct *hearings*, the

filing of retaliatory misconduct *reports* is grievable under MDOC Policy Directive 03.02.130. Three

of Reynolds-Bey's grievances complained about retaliatory filing of major misconduct charges:

Grievances OTF 05-02-0092-28E and OTF 05-02-0093-28E (both filed on Feb. 8, 2005) alleged that

major misconduct reports issued on September 14, 2004, and December 1, 2004, were retaliatory.

Both grievances were deemed untimely filed and rejected on that basis at each step of the grievance

---

[6]The version of Policy Directive 03.03.105 in effect at the times relevant to this suit was not
included in the parties submissions to the district court or to this Court on appeal.

review process. They are therefore not properly exhausted and may not form the basis of claims in federal court.

Reynolds-Bey's grievance OTF-05-03-00153-28E, filed on March 3, 2005, alleges that the December 1, 2004, major misconduct report for insolence was issued as retaliation for "the filing of prior lawsuits . . . against prison employees in federal court, grievance writing, family activity in protesting prison officials activities against them, and ect. [sic]." A hearing officer found Reynolds-Bey not guilty of this charge on December 16, 2005 (more than two months prior to when he filed the grievance). The grievance was rejected as untimely at Step I on the basis that it was filed six months late.[7] At Step II, it was again rejected, this time because the respondent interpreted the grievance as challenging the outcome of the misconduct hearing, which is non-grievable.[8] The Step III response referenced the Step I and II responses but then denied the grievance on the substantive ground that

> Dismissals/not guilty findings in major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff. The grievant has presented insufficient evidence from which to conclude that staff acted improperly or that their actions were retaliatory or punitive in nature.

---

[7]The misconduct report at issue here was issued on December 1, 2004, but concerns an incident alleged to have taken place on September 2, 2004. The grievance was therefore actually filed three months late, counting from the issuance of the misconduct report, not six months late as stated in the Step I response. Three months is still far outside the applicable time limit, however.

[8]This appears to be an improper reason for rejecting the grievance. The grievance complained about the retaliatory *filing* of a major misconduct report, not about the outcome of the misconduct hearing. Only the latter is non-grievable under Policy Directive 03.02.130.

15

(R. 32-4, at 6.) The magistrate judge's R&R found the claim unexhausted due to untimeliness. Reynolds-Bey does not specifically argue that this finding should be disturbed. He does, however, argue that the district court erred in dismissing his suit on exhaustion grounds. Based on our convention of liberally construing the filings of *pro se* plaintiffs, *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005), and in light of developments in the law of this circuit subsequent to Reynolds-Bey's filing of his appellate brief, *see Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), we will address the question whether Grievance OTF 05-03-00153-28E is properly deemed unexhausted given the Step III respondent's decision to dismiss the grievance on the merits rather than on procedural grounds.

After the district court issued its order granting summary judgment (and after Reynolds-Bey filed his appellate brief), this Court decided *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010). There, the court held that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.* at 325. Thus, "the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim." *Id.* This rule is based substantially on the similarity of the PLRA exhaustion regime and the procedural default doctrine in habeas cases.[9] *Id.*

_____

[9]In the habeas context, a petitioner procedurally defaults if
(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.
*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

Here, the grievance was rejected under the procedural rule on timely filing at the first step, improperly rejected under another procedural rule at the second step, and rejected on the merits at the third step. We determine whether this constitutes proper exhaustion by reference to habeas doctrine. *See id.* at 325. *Reed-Bey* states that in habeas cases, "'a procedural default does not bar consideration of a federal claim . . . unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,' or it is otherwise clear they did not evaluate the claim on the merits." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). Here, the Step III response (the equivalent of the last state court in habeas) did not "clearly and expressly" state that Reynolds-Bey's fifth grievance was being rejected on procedural grounds. Rather, it mentioned the procedural bases for the Step I and II decisions and then rested its determination on the substantive ground that "[d]ismissals/not guilty findings in major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff." (R. 32-4 at 6.) Therefore, we find that Grievance OTF 05-03-00153-28E was exhausted for purposes of the PLRA.

The substance of Reynolds-Bey's complaint in Grievance 05-03-00153-28E raises a First Amendment retaliation claim that should be addressed in the first instance by the district court. We therefore remand for consideration of Reynolds-Bey's claim that the December 1, 2004, major misconduct report was issued in retaliation for his First Amendment-protected activity of filing grievances and other petitions. We otherwise affirm the district court's determination that Reynolds-Bey's other relevant grievances were not properly exhausted, and that the state procedural rule on timely filing was enforced by the Step III respondent as to each of them.

D. RETALIATORY HARASSMENT BY KINGSBURY

Reynolds-Bey alleges that Kingsbury subjected him to a search, used racial slurs, and made implicit threats in retaliation for Reynolds-Bey's previous filing of a § 1983 lawsuit. Reynolds-Bey's complaint thus raises a First Amendment retaliation claim.

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). It is undisputed that Reynolds-Bey's filing of his original suit in *Reynolds v. N. Smith*, 2:01-cv-43 (W.D. Mich. filed Mar. 16, 2001), constitutes protected conduct. The magistrate judge found that Reynolds-Bey's claim failed on the second and third elements of the retaliation claim.

On the second element, "the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). The magistrate judge concluded that being subjected to a single search while exiting the dining hall would not "deter a person of ordinary firmness from engaging in protected conduct." (R&R 6, R. 104.)

Examples of adverse actions that this Court has held sufficient to meet the "person of ordinary firmness" standard include initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, *Siggers-El*, 412 F.3d at 701-02, threatening to impose disciplinary sanctions, *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir.

2004), issuing major misconduct reports that could result in loss of disciplinary credits, *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007), and threatening the use of physical force, *Thaddeus-X*, 175 F.3d at 398. On the other hand, this Court has opined that "prisoners are expected to endure more than the average citizen," *Siggers-El*, 412 F.3d at 701, and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities. Thus, "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003) (unpublished). Other routine inconveniences of prison life also do not constitute adverse action. *See, e.g.*, *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) (unpublished) (transfer of inmate to another prison in the absence of "foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts" is not adverse action); *Harbin-Bey v. Rutter*, 420 F.3d 571, 579-80 (6th Cir. 2005) (defendant's filing of "Notices of Intent to Conduct an Administrative Hearing," which did not result in loss of inmate privileges, did not qualify as "adverse action").

Here, Reynolds-Bey alleges that Kingsbury searched him (either once or twice in quick succession) and used a racial slur and a thinly-veiled threat in retaliation for Reynolds-Bey's protected conduct. Although this is a close issue, we find that the alleged events could constitute action sufficient to deter a prisoner of ordinary firmness from engaging in protected activities in the future.[10] A single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of

---

[10]It is immaterial that Reynolds-Bey was not himself deterred from further First Amendment-protected activity, seen in his continued filing of grievances and other communications. "[T]he issue

19

previous questionable shakedowns or other such factors, would not meet the adverse action standard. *See Tate*, 85 F. App'x at 417. Here, however, Reynolds-Bey further asserts that Kingsbury "use[d] . . . racial threats to advocate physical violence." (Pro Se Appellant Br. 9.) Although the alleged threats of violence or other retaliation were not explicit, the words Reynolds-Bey attributes to Kingsbury can be construed as an implicit, and nontrivial, threat. First, the use of racial slurs by an individual in a position of authority is repugnant and often carries with it an implicit threat of violence. *Cf. Ward v. Washington Mut.*, No. 03 C 3566, 2004 WL 2534628, at *3 (N.D. Ill. Sept. 30, 2004) (in workplace racial discrimination claim, noting that the use of "odious [racial] epithets . . . reasonably could have conjured up disturbing episodes from our society's checkered history of inter-racial relations"). Second, Kingsbury's alleged statements that Reynolds-Bey "will always stay on my list" (Am. Compl. ¶ 27) and that "Reynolds was the one" (Grievance No. OTF- 04-06-0361- 18B), as well as his purported reference to the district court decision mentioning Kingsbury (Am. Compl. ¶ 57(b)), could reasonably be interpreted by a person of ordinary firmness as a serious threat–particularly when coupled with the dining hall searches. The standard set out in *Thaddeus-X* therefore leads to the conclusion that the district court erred in finding that Reynolds-Bey failed to raise a genuine issue of material fact as to the second element of the retaliation test. *See Thaddeus X*, 175 F.3d at 398 ("[W]hile certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only

---

is whether a person of ordinary firmness would be deterred, not whether [Plaintiff] himself actually was deterred." *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.").

The third element of the retaliation standard requires a showing that "there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394. This is a subjective test, looking to the defendant's intent. *Id.* at 399. The magistrate judge found that Reynolds-Bey "alleges that he was searched in retaliation for his long-concluded lawsuit, in which Kingsbury was not a defendant. Ascribing cause and effect in these circumstances would be far-fetched." (R&R 7, R. 104.) The lack of temporal proximity and the fact that Kingsbury was not a party to the 2001 suit do tend to cut against the existence of a causal connection.

However, temporal proximity by itself is not sufficient to show a causal connection, and there is no reason to think it is strictly necessary either. *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) ("[E]vidence [of temporal proximity] alone is not sufficient to meet [plaintiff's] burden to show that the filing of grievances was a substantial or motivating factor for his transfer."). Further, although three years had passed since Reynolds-Bey filed his original suit, the time between when the district judge entered final judgment in that suit and the alleged retaliatory incident was only one year, and the Sixth Circuit did not issue its ruling in the case until April 8, 2004, less than three months before the incidents at issue here. Additionally, Reynolds-Bey offers an explanation for the time lag between the protected activity and the allegedly retaliatory action: Kingsbury was previously employed at another MDOC facility and only had occasion to interact with Reynolds-Bey once he began working at the Boyer Road facility. Upon encountering Reynolds-Bey at the new

21

facility, the incident in question allegedly took place. The report and recommendation also failed to credit Reynolds-Bey's allegation that Kingsbury made specific reference to the protected activity–the 2001 suit–when he conducted the shakedown and used the racial slur.[11] While the magistrate judge made much of the fact that Kingsbury was not a named defendant in the 2001 suit, it is unclear why this should be dispositive. Kingsbury's name was indeed mentioned in the opinion issued in that case, and Reynolds-Bey alleges on appeal that Kingsbury was upset because the suit was filed against his "friends."

"Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399. The plaintiff can demonstrate a causal connection using circumstantial evidence. *Goad v. Mitchell*, 297 F.3d 497, 505 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 399-400. Where a plaintiff sets forth "specific, nonconclusory allegations" of retaliation "that could support a jury verdict at trial," the defendant cannot carry his or her burden at summary judgment by offering mere "summary denials." *Thaddeus-X*, 175 F.3d at 399. Kingsbury's evidence in support of his motion for summary judgment

---

[11]Reynolds-Bey's amended complaint asserts that Kingsbury stated that "Niggers and litigants like you will always stay on my list and you can write that in any grievance or tell the court that." (Am. Compl. ¶ 27.) His amended complaint further alleged that Kingsbury made reference to the previous lawsuit during the events in question. (*Id*. ¶ 57(b).) In his appellate brief, Reynolds-Bey for the first time additionally alleges that Kingsbury called Reynolds-Bey "the same N. . . who filed a lawsuit in 2001 against other prison guards that were his friends." (Pro Se Appellant Br. 9.) That statement is not properly before this Court because it was introduced for the first time on appeal.

consists of his own affidavit, which states that "Prisoner Reynolds . . . claims that I had used a racial slur toward him. This allegation is a complete and total fabrication." (Br. in Supp. of Def. Mark Kingsbury's Mot. for Summ. J., Ex. A at 1.) Kingsbury further states that "Prisoner Reynolds . . . also claims that I conducted a shakedown as a form of harassment. Prisoners routinely complain about shakedowns and often consider them harassment. It is a requirement of my job to conduct shakedowns . . . ." (*Id.* at 2.) This evidence consists of precisely the type of summary denial at issue in *Thaddeus-X. See Thaddeus-X*, 175 F.3d at 384 (describing defendants' denials); *id.* at 399-400 (discussing summary judgment standard with regard to causal connection element of prison retaliation claims). Therefore, Kingsbury has failed to rebut Reynolds-Bey's allegations that a causal connection existed.

Accordingly, we reverse the district court's grant of summary judgment to Kingsbury and remand for further proceedings on this claim.

### E. CHALLENGE TO DISTRICT COURT ORDER ALLEGEDLY LIMITING PLEADINGS TO THE ISSUE OF EXHAUSTION

Finally, Reynolds-Bey alleges that the district court ordered that his pleadings be limited to the exhaustion issue but then unfairly granted summary judgment to Harris-Spicer on the basis of absolute immunity rather than exhaustion, without giving Reynolds-Bey a chance to argue issues other than exhaustion. Reynolds-Bey does not provide a citation to the record identifying such an order of the district court. The only order that could conceivably form the basis of Reynolds-Bey's objection is an order entered on April 10, 2007 that directed Defendants, if they wanted to argue that Reynolds-Bey had failed to exhaust his administrative remedies, to reply to Reynolds-Bey's amended

complaint by filing a motion for summary judgment limited to the exhaustion defense only. That order constrained Defendants, not Reynolds-Bey. It appears that his argument is predicated on a misunderstanding of the district court's order.

Reynolds-Bey requests that the case be remanded so that the district court can determine whether his claims against Harris-Spicer have been exhausted. The district court addressed this issue in its response to Reynold's-Bey's objection to the magistrate judge's report and recommendation:

> The Report and Recommendation explains that Mr. Reynold's challenge of Defendant Harris-Spicer's July 2004 decision finding him guilty of a major misconduct is non-grievable. But, as the Report and Recommendation correctly points out, this is because the hearing officer is entitled to absolute immunity for claims related to her decision. The Report and Recommendation thus addresses the exhaustion issue, and also makes it clear that there is no viable claim against Ms. Harris-Spicer because she is entitled to absolute immunity for her decision as a hearing officer.

(Order 3, R. 101.) The magistrate judge's finding that the complaint against Harris-Spicer is non-grievable necessarily means that the claim is unexhausted, because a non-grievable issue cannot form the basis of a properly exhausted administrative grievance. Whether the issue is non-grievable *because* hearing officers have absolute immunity, or whether immunity is an alternative ground for granting summary judgment is immaterial. There is no ground for remanding the case to further address exhaustion of the claim against Harris-Spicer.

## III

For the reasons stated above, we **AFFIRM IN PART** and **REVERSE AND REMAND IN PART**. We **AFFIRM** the district court's determination that Hearing Officer Harris-Spicer is entitled to absolute immunity and that Reynolds-Bey's grievances (excluding the grievances against

Kingsbury and Grievance OTF-05-03-00153-28E) are unexhausted for purposes of the PLRA. We **REVERSE** the grant of summary judgment on the issue of the exhaustion of Grievance OTF-05-03-00153-28E and **REMAND** for consideration of the merits of the retaliation claim arising out of that grievance. We **REVERSE** the district court's grant of summary judgment in favor of Kingsbury on the First Amendment retaliation claim and **REMAND** for further proceedings on that claim.