NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0697n.06

No. 11-1454

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 29, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GREGORY COOK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| PATRICIA CARUSO, et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: MARTIN, BOGGS, Circuit Judges; COLLIER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge. Gregory Cook, a Michigan prisoner, filed the underlying action pro se pursuant to 42 U.S.C. § 1983, alleging that various prison officials and employees violated his right under the Eighth Amendment to be free from cruel and unusual punishment. This appeal poses two issues. First, did the district court err in granting the summary-judgment motion of defendants Patricia Caruso and Dennis Straub, Director and Assistant Director, respectively, of the Michigan Department of Corrections? The answer is no, because Cook failed to proffer facts showing that either of them became aware of facts from which either Caruso or Straub could draw an inference that he faced a substantial risk of serious harm. Second, did the district court err in dismissing his lawsuit for failure to exhaust his administrative remedies? Again,

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

the answer is no, because Cook's first grievance failed to give notice to prison officials of the problem that formed the basis of his later lawsuit, and his second grievance was time-barred. Therefore, we **AFFIRM** the district court's judgment.

Gregory Cook was diagnosed with epilepsy while serving in the United States Army, which honorably discharged him in 2001. Cook was incarcerated in the Michigan Department of Corrections in 2006; shortly after his arrival, the prison issued him a Special Accommodation Notice because of his epilepsy. The Notice ordered that Cook be placed on a bottom bunk in a ground-floor cell and was to be effective until December 2007.

The Michigan Department of Corrections transferred Cook to another prison in January 2007 and assigned him to a top bunk in a second-floor cell. Cook told prison employees Lane, Truly, Steward, and Nobles that the prison needed to comply with the Notice, but Cook remained assigned to a top bunk.

In February and March 2007, Cook sent three letters to Caruso, with copies to Straub, notifying them that the prison had not complied with the Notice. In the first letter, Cook stated "I fear for my life or serious injury due to me having grand mal seizures," and asked Caruso to intervene on his behalf. In the second letter, Cook stated "I fear serious injury or even death. Please correct this matter." In the third letter, Cook stated "I fear for my life and/or serious injury," and he asked Caruso to "correct this matter." Neither Caruso nor Straub responded to any of Cook's letters.

Also in February and March, both Cook's girlfriend and his mother called Caruso's and Straub's offices to convey their concern that he had been assigned to a top bunk; someone in Caruso's office told both of them that the matter would be looked into.

Then, on March 13, 2007, Cook wrote the prison health care staff to ask if the Notice was still in effect; the staff responded in writing three days later confirming that the Notice would be in effect until December 2007. Cook then informed prison employees Gladney and Kristenson, both verbally and in writing, that the prison needed to assign him to a bottom bunk. The prison did not change his bunk assignment.

On March 20, 2007, Cook suffered a grand mal seizure while on his top bunk. He fell, hitting his head on the floor and injuring his back. About an hour after suffering the seizure, the prison sent him in an ambulance to the hospital. X-rays were taken, which did not show that Cook suffered any injuries. Cook alleged in his complaint, however, that his condition subsequently worsened so that he was confined to a wheelchair.

The day after his fall, Cook filed his first grievance, in which he wrote that he wished to grieve the prison's healthcare department staff's "failure to respond to a medical emergency" that occurred the previous day. Cook wrote that he suffered from epilepsy, experienced a seizure, and fell from the top bunk and required urgent medical attention. He alleged that the healthcare staff did not follow the prison's directives because "it took approximately an hour before I was seen by my healthcare professional[.]" Cook requested that the healthcare staff "be disciplined" in accordance with prison rules. Cook did not, however, name the healthcare staff whom he alleged had violated the directives. The prison gave Cook a receipt showing that it had received the first grievance at Step I of the prison's grievance procedure.

The prison did not respond to Cook's grievance by the date it stated on the receipt that it would respond, so Cook moved the grievance to Step II, noting that he was moving his grievance to Step II because the prison had failed to respond to Step I within the required time.

The prison responded to the grievance at Step II by stating that Cook alleged in his grievance that "health care refused to respond to a seizure he experienced" on March 20, 2007. The prison explained that its review of the record revealed that Cook was seen by a medical provider on March 20, 2007. The prison explained that the medical provider "ruled out to see a neurologist and to continue Dilanti. Mr. Cook was also seen by nursing in the clinic on [March 20, 2007] for a fall and possible Dilanti over dose. He was sent to the E.R." In the section of the prison's grievance response form titled "Conclusion," the prison stated that the grievance was "resolved." The prison did not assert that Cook had failed to comply with any of the grievance procedure's rules.

Cook then moved the grievance to Step III; he stated that the reason for his appeal was that both the Step I and Step II respondents "failed to respond within the required time period consistent" with the prison's grievance policy.

In August 2007, the prison responded to the grievance at Step III by concluding that the grievance had been resolved because the prison treated Cook by taking him to the hospital. In its response, the prison stated that Cook alleged "he did not receive appropriate emergency treatment when he had a seizure and fell from the top bunk in his room." The prison acknowledged that Cook "did not receive a timely response at step I or step II and proceeded to step III" in accordance with the prison's grievance policy. Turning to the merits of Cook's grievance, the prison stated that "[t]he information presented upon appeal to step III has been reviewed in addition to the medical record."

The prison asserted that Cook "received treatment through the emergency room for injuries received and follow up care to his seizure." The prison explained that its "[i]nvestigation" showed that after suffering the seizure, the prison took Cook to the emergency room where x-rays were taken with "negative results." The prison stated that Cook "has been appropriately placed on a bottom bunk." The prison concluded by stating that "[t]his matter will be addressed administratively and any corrective action deemed necessary will be taken. No further relief can be provided. Grievance resolved." Again, the prison responded on the merits and did not claim that Cook had failed to comply with any of the grievance procedures' rules.

Then, on August 14, 2008—over a year after he fell off the top bunk—Cook filed a second grievance at Step I. In this second grievance, Cook gave the date of incident as March 20, 2007: the date on which he suffered a seizure and fell. In this second grievance, Cook complained that he seriously injured his back because of the prison staff's negligence in allowing him to remain in a top bunk instead of assigning him to a bottom bunk. He stated that he had a doctor's order for a bottom bunk because of his epilepsy. He further stated that he told health care staff Gladney and Kristenson verbally and in writing about his being placed on the top bunk, but noted that "they allowed me to stay in this forseeable [sic] danger." The prison denied the second grievance at Step I by asserting that Cook had exceeded the time limit in filing it.

Cook then moved the second grievance to Step II; in doing so, Cook wrote that the prison's Step I response to this second grievance had failed to address Cook's having sustained a serious injury because of the prison staff's failing to follow the Notice. Cook requested that the prison give

him physical therapy or surgery to repair the damage done to his back in the fall from the top bunk.

He also asked for $45.5 million in punitive, compensatory and other damages.

The prison responded to the second grievance at Step II, summarizing Cook's Step I grievance as complaining that he had a doctor's order to be on a bottom bunk, which the prison did not follow, and that he had a seizure and fell out of the bunk injuring his back. The prison summarized its response at Step I by stating that the grievance was untimely. The prison noted that Cook had moved this second grievance to Step II because he alleged that he sustained a serious injury due to staff failing to follow the medical order. The prison noted that Cook requested, in his Step I grievance, physical therapy or surgery to repair the damage done by falling on his back from the top bunk. The prison then summarized its Step II investigation by stating that it had reviewed Cook's medical record and describing the medical treatment the prison had given him. In the section of the form titled "Conclusion," the prison wrote "Grievance: Denied."

Cook then moved the second grievance to Step III, stating that the prison staff's failure to follow the Notice had resulted in a back injury that the prison had not remedied, in violation of the Eighth Amendment to the United States Constitution. He repeated his request for the prison to provide him with money damages, surgery, and rehabilitation.

The prison responded by saying that it had reviewed all of the information, including electronic medical records, and concluded that it rejected the grievance as untimely, thereby upholding at Step III the prison's rejection of the grievance as untimely at Step I.

Cook sued the following prison officials and employees, alleging that they violated his right under the Eighth Amendment to be free from cruel and unusual punishment: Caruso, the Director

of the Michigan Department of Corrections; Straub, the Assistant Director of the Michigan Department of Corrections; Kristenson, a Corrections Department Nurse; Steward, the Assistant Deputy Warden of Housing where Cook was incarcerated; Truly, a Resident Unit Manager at the prison where Cook was incarcerated; Lane, an Assistant Resident Housing Supervisor; and Gladney, a Corrections Department Nurse. Cook alleged that Caruso and Straub failed to make policy or take corrective action to prevent predictable violations of Cook's constitutional rights. He alleged that the defendants were deliberately indifferent to the substantial risk that he would suffer serious injury as a consequence of his having been assigned to a top bunk.

Defendants Caruso and Straub then moved for summary judgment, arguing that Cook had failed to allege facts in his complaint showing that Caruso and Straub were personally involved in the alleged wrongdoing. The defendants argued that, as a matter of law, Cook could not hold Caruso and Straub liable under a theory of *respondeat superior*. To support their motion, Straub and Caruso both averred that they had no personal involvement in the events that formed a basis for Cook's complaint. Caruso swore that she did not become aware of Cook's allegations against her until she was served with his complaint.

The defendants also moved to dismiss Cook's complaint on the basis that Cook had failed to exhaust the prison's administrative remedies. The defendants argued that he failed to exhaust the prison's administrative remedies for three reasons: first, because, in his first grievance, he failed to name the defendants he later sued; second, because he did not set forth a theory of recovery; and third, because he filed the second grievance untimely—nearly seventeen months after his seizure and fall happened. Cook, acting pro se, opposed the motions. The district court granted the motion for

summary judgment and granted the motion to dismiss, dismissing Cook's action without prejudice, but dismissing the action as to Caruso and Straub "with prejudice." Cook timely appealed; the Vanderbilt Appellate Litigation Clinic at Vanderbilt Law School agreed to represent him in this appeal.

We first address Cook's argument that the district court erred in granting summary judgment in favor of Caruso and Straub. We review de novo a district court's grant of summary judgment. *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1093 (6th Cir. 1998). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. The party moving for summary judgment bears the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *Id*. Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Mosholder v. Barnhardt*, 679 F.3d 443, 448–49 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); Fed. R. Civ. P. 56(e)). The court must determine either whether the evidence—viewed in the light most favorable to the nonmoving party—presents a sufficient disagreement to require submission to the fact-finder, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Prevo's Family Market, Inc.*, 135 F.3d at 1093 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

In their summary-judgment motion, Caruso and Straub argued that they were not "personally involved" in the activity that formed the basis of Cook's complaint—the failure to assign him to a lower bunk. They argued that they had not "impliedly authorized, approved, or knowingly

acquiesced in the allegedly unconstitutional conduct." The district court granted the defendants'

motion on the basis that Cook had not proved that they were "personally involved" in the violation

of Cook's constitutional rights. To find a supervisory official liable, a defendant need not prove

personal *involvement*, but must at least show that the official "implicitly authorized [or] approved"

or "knowingly acquiesced in" the alleged constitutional violation. *Sheehee v. Lutrell*, 199 F.3d 295,

300 (6th Cir. 1999). Although the district court applied an overly strict standard, Cook nevertheless

fails to demonstrate that supervisor liability is warranted. We may "affirm the decision of the district

court if it is correct for any reason, even a reason different from that relied upon by the district

court." *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011) (citing *Dixon v. Clem*, 492 F.3d 665,

673 (6th Cir. 2007)).

Here, the district court did not err in granting summary judgment because Cook did not

satisfy the strictures of *Farmer v. Brennan*, 511 U.S. 825 (1994). To hold a prison official liable

under the Eighth Amendment for denying a prisoner humane conditions of confinement, a prisoner

must make two showings. *Id.* at 834. First, the prisoner must prove that he or she suffered a

deprivation; this alleged deprivation "must be, objectively, 'sufficiently serious.'" *Id.* (quoting

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, a prisoner must prove that a prison official acted

with a "'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson*, 501 U.S. at 297) (rest of citation

omitted). In prison condition cases, this sufficiently culpable state of mind "is one of 'deliberate

indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03) (rest of citations

omitted).

*Farmer* defined "deliberate indifference" as a subjective, not an objective test. *Id.* at 837. *Farmer* held that a prisoner must show that the official both knew of and disregarded an excessive risk to inmate health or safety, meaning that the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. *Id.* The Court added that a prisoner need not show that a prison official acted or failed to act while actually believing that harm would befall a prisoner; rather, the prisoner has met his or her burden by proving that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm. *Id.* at 842. The Court explained that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (citations omitted). Moreover, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (citation omitted). The Court hypothesized that prison officials defending against an Eighth Amendment claim based on deliberate indifference might try to show, for example, "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844.

Here, in responding to the summary judgment motion, Cook submitted the three letters he sent to Caruso, with copies to Straub, in February and March 2007, informing her that the prison had not complied with the Notice to put him on a bottom bunk. The letters stated that the prison had issued him a Notice forbidding his assignment to a top bunk, that he was epileptic and suffered from

grand mal seizures, and that he feared serious injury or even death because the prison was not following the Notice. The letters also asked that he be assigned to a bottom bunk.

But Cook did not proffer any evidence to show that Caruso or Straub ever read the letters, nor drew any inferences about them. Under *Farmer*, a prisoner must show both that the official became aware of facts from which the official could draw the inference that a substantial risk of serious harm exists and that the official drew the inference. *Id.* at 837. In opposing the summary-judgment motion, Cook did not proffer facts to show either that Caruso or Straub became aware of the facts of his inappropriate bunk placement or that they drew any inference from those facts. Therefore, summary judgment as to them was proper.

We note that the district court also held that summary judgment as to Straub and Caruso was proper because "the unnotarized declarations and letters" that Cook submitted in opposition to the prison's summary judgment motion were hearsay. In this regard, the district court erred because the letters and affidavits fit within an exception to the hearsay rule.

Whether a piece of evidence is hearsay is a question of law that we review de novo. *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Nevertheless, "[a] statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay." *Rodriguez-Lopez*, 565 F.3d at 314 (citing *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007) (out-of-court statement offered for the fact that it was said was not hearsay) *overruled on other grounds by Goss v. FBL Servs, Inc.*, 557 U.S. 167 (2009)). The rule, then, is that a statement or

writing offered to establish the state of mind of the hearer or reader that the statement or writing induces, such as receiving notice, is not hearsay.

Cook, however, did not submit these letters to prove that the prison had issued him a Notice, nor to prove the truth or falsity of his being an epileptic, nor that he feared serious injury. Rather, Cook offered the affidavits and letters to prove that Caruso and Straub had received notice of Cook's situation; therefore, he offered this evidence to prove the bare fact that he had written to Caruso and Straub, rather than for the truth of the letters' contents.

The same analysis applies to the affidavits from Cook's mother and his girlfriend. Cook submitted them not for their truth, but to establish notice—that his mother and girlfriend had called both Caruso and Straub and spoke to someone (although not Caruso nor Straub) in their offices to let them know about Cook's situation. Whether or not whoever in their offices they spoke to actually told Caruso and Straub about the calls is a jury question.

The district court also erred because a district court may consider, for summary judgment purposes, an un-notarized affidavit if the affiant signs under penalty of perjury. 28 U.S.C. § 1746. Here, Cook's mother and girlfriend both signed and dated their affidavits "pursuant to 28 U.S.C. § 1746 . . . under the penalty of perjury." The district court should not have found that Cook's evidence was hearsay. He submitted this evidence to counter Caruso's and Straub's affidavits that they had no personal involvement in refusing to place Cook on the bottom bunk. But the district court's error in this regard does not mean that summary judgment was not proper. As discussed above, the evidence Cook submitted could not establish that Caruso and Straub acted with deliberate indifference to his situation.

Next, we address Cook's argument that the district court erred in dismissing his lawsuit for failure to exhaust his administrative remedies through the prison's grievance process. We review de novo a district court's dismissal of a prisoner's civil-rights claim for failure to exhaust administrative remedies. *Risher v. Lappin*, 639 F.3d 236, 239–40 (6th Cir. 2011) (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 993 (6th Cir. 2004)). Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, non-exhaustion is an affirmative defense for which the defendants bear the burden of proof. *Id.* at 240 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224–25 (6th Cir. 2011)).

A prisoner must exhaust the prison's administrative remedies before filing a lawsuit under section 1983. 42 U.S.C. § 1997e(a). Requiring exhaustion serves two purposes. First, it gives an agency "'an opportunity to correct its own mistakes with respect to the program it administers before it is haled into federal court,'" and it discourages "'disregard of [the agency's] procedures.'" *Woodford v. Ngo*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, exhaustion promotes efficiency. *Id.* This is because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Proper exhaustion of administrative remedies requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91 (footnote omitted). Here, the administrative remedy is the prison's grievance procedure. The purpose of a grievance in the prison context is "to alert prison officials to a problem." *Bock*, 549 U.S. at 219 (citing *Johnson v. Johnson*, 385 F.3d 503 (6th Cir. 2004)).

- 13 -

Here, Cook's first grievance failed to alert the prison officials to the problem of his placement on the top bunk. Instead, the first grievance complained of the inadequacy of the emergency response to his fall. Cook's first grievance completely failed to state the fact that his prior requests for bottom-bunk placement went unheeded, which became the entire premise of this lawsuit. Cook's first grievance did not exhaust the prison's administrative remedies because it failed to alert the prison officials to the problem: that it had ignored his requests that the prison enforce its own order that he be assigned to a bottom bunk.

While Cook's second grievance did complain of his assignment to a top bunk, Cook failed to exhaust the prison's administrative remedies because he filed it untimely—more than a year after the fall occurred.

Cook argues on appeal that his second grievance did exhaust the prison's administrative remedies, notwithstanding its tardiness, if we analogize his case to *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010). In *Reed-Bey*, a prisoner appealed a district court's judgment dismissing his section 1983 lawsuit against Michigan prison officials on the ground that he did not exhaust his claim as U.S.C. § 1997e(a) required. *Id.* at 323. We reversed and remanded, having concluded that Reed-Bey had exhausted his claim because the Michigan Department of Corrections opted to dismiss his grievance on the merits rather than to invoke its procedural bar. *Id.* at 326.

Reed-Bey filed a prison grievance complaining about the lack of follow-up care for an injury he suffered during a prison basketball game. *Id.* at 323. When the prison failed to respond within the time specified by the prison's grievance policy, Reed-Bey filed a Step II grievance appeal. *Id.* Two prison nurses rejected Reed-Bey's initial grievance, noting that prison officials had requested

an orthopedic consultation but were waiting for approval from a private health-management company the prison used. *Id.* When prison officials failed to respond to his Step II appeal by the required deadline, Reed-Bey filed a Step III appeal with the Director of Prisons. Later, a health unit manager belatedly denied Reed-Bey's Step II appeal, stating that his care complied with the "'contemporary standard of medical practice in the community'" and because the prison health staff had given him adequate pain medication. *Id.* (citation omitted). Then, two months after the deadline for resolving Reed-Bey's Step III appeal had passed, the Director of Prisons denied Reed-Bey's Step III appeal on the merits.

We said that Reed-Bey's appeal presented one question: whether he properly exhausted his administrative remedies despite failing to name a single individual in his initial grievance. *Id.* at 324. We reasoned that if the prison considers a grievance on the merits, this allows a federal court to consider the grievance's merits—"even when a procedural default might otherwise have resolved the claim." *Id.* at 325. We concluded that Reed-Bey "properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses *at each step.*" *Id.* at 326 (emphasis added).

But Cook's case is distinguishable from *Reed-Bey* because Cook did not receive merits-based responses to his second grievance at any step in the grievance process. Here, the prison rejected Cook's second grievance at Step I by asserting the procedural defense that the grievance was untimely. The prison did not address the grievance's merits at Step II just because it examined the basis for Cook's injury and noted that further treatment had been ordered. Rather, if the prison had examined the merits at Step II, its response would have discussed his actual bunk placement, and

whether or not the prison had violated its own policy in assigning him to a top bunk. At Step III, the prison stated that Cook alleged his bottom bunk detail was not honored causing him to fall during a seizure. It went on to state that the prison had reviewed all the information presented upon appeal to Step III, "including all electronic medical records." It added that "[m]onetary compensation requested is inappropriate in this forum. Pursuant to OP/PD 03.02.130 Grievance to be rejected as untimely, illegible, duplicative. Untimely rejection occurred at Step I and is upheld at Step III." Simply mentioning that the prison reviewed the record does not a merits-based response make. The rest of the Step III response reasserted the prison's procedural defenses. For *Reed-Bey*'s holding to apply, Cook would have had to receive "merits-based responses *at each step*." *Reed Bey*, 603 F.3d at 325 (emphasis added). He did not. Therefore, Cook's second grievance failed to exhaust the prison's administrative remedies afforded by its grievance procedure. Because of this, and the other reasons discussed, we **AFFIRM** the district court's judgment.