RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MARK ANTHONY REED-BEY,

                    Plaintiff - Appellant,

      *v.*

GEORGE PRAMSTALLER, RICHARD D.
RUSSELL, BUREAU OF HEALTH CARE
MICHIGAN DEPARTMENT OF CORRECTIONS,
CORRECTIONAL MEDICAL SERVICES,
INCORPORATED, MICHIGAN DEPARTMENT OF
CORRECTIONS, S. VADLAMUDI, CAROLYNN
DUBUC, ANDREW JACKSON, JUSTINA NZUMS
and RUTH INGRAM,

                    Defendants-Appellees.

No. 08-1774

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-10934—Victoria A. Roberts, District Judge.

Submitted: April 22, 2010

Decided and Filed: April 28, 2010

Before: GUY, BOGGS and SUTTON, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Clifton B. Schneider, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, James T. Mellon, MELLON, McCARTHY & PRIES, P.C., Troy, Michigan, for Appellees. Mark Anthony Reed-Bey, Ionia, Michigan, pro se.

———————————

**OPINION**

———————————

    SUTTON, Circuit Judge. Mark Anthony Reed-Bey, a Michigan inmate, appeals a district court's judgment dismissing his § 1983 lawsuit against Michigan prison officials on the ground that he did not exhaust his claim. *See* 42 U.S.C. § 1997e(a). Reed-Bey pursued

1

his grievance through all three levels of prison review, yet he failed to identify the "names of all those involved" in the grievance, as the prison's grievance procedures require. R.42-6 ¶ T. Because the Michigan Department of Corrections opted to dismiss his grievance on the merits rather than invoke its procedural bar, Reed-Bey exhausted his claim. We reverse and remand.

## I.

On September 12, 2005, Reed-Bey injured his shoulder during a prison basketball game, sufficiently badly that one of the bones was visibly out of place. That evening, an emergency-room physician diagnosed Reed-Bey with a Grade III acromioclavicular separation and ligament damage. The emergency-room physician discharged Reed-Bey later that night and recommended that he see an orthopedic specialist within five days.

Prison officials did not send Reed-Bey to an orthopedic specialist until December 1, even though he requested follow-up care at least four times in the interim and even though an October 25 X-ray showed that the shoulder separation had worsened. On December 1, the specialist told Reed-Bey that his shoulder required surgery and that the shoulder pain and accompanying headaches—some lasting up to three days—would persist until doctors fixed his shoulder. Prison officials did not approve his shoulder surgery until some time after March 2006.

On October 10, 2005, Reed-Bey filed a prison grievance complaining about the lack of follow-up care for the injury. When the prison failed to respond within 15 business days, as required by prison policy, he filed a Step II grievance appeal on November 3. On November 18, Nurses Nzums and Ingram rejected Reed-Bey's initial grievance, noting that prison officials had requested an orthopedic consultation but were awaiting approval from Correctional Medical Services, a private health-management company hired by the State of Michigan to provide medical services for the Department of Corrections. When prison officials failed to respond to his Step II appeal by the required deadline, Reed-Bey filed a Step III appeal with the Director of Prisons on December 6. On December 28, Carolynn DuBuc, a health unit manager, belatedly denied Reed-Bey's Step II appeal because his care complied with "contemporary standards of medical practice in the community" and because the prison health staff had given him adequate pain medication. R.1 Ex. D at 2. On

March 20, two months after the deadline for resolving Reed-Bey's Step III appeal had passed, the Director of Prisons denied Reed-Bey's Step III appeal on the merits.

On March 1, 2006, Reed-Bey sued the Michigan Department of Corrections and Correctional Medical Services, along with several employees of both entities, alleging that they violated his Eighth (and Fourteenth) Amendment rights by denying him adequate medical care. Roughly a month later, the district court summarily dismissed the lawsuit because Reed-Bey did not properly exhaust his administrative remedies by naming all of the defendants in his initial grievance, as required under the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-66—or so we (and the district court) thought at the time. *See Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Roughly a year later, the Supreme Court overruled *Burton's* interpretation of the PLRA, *Jones v. Bock*, 549 U.S. 199 (2007), and accordingly we vacated the district court's decision in *Reed-Bey* and remanded the case for further consideration.

On remand, CMS filed a motion to dismiss, again claiming that the PLRA barred Reed-Bey's lawsuit because he did not name CMS in his initial grievance. Because the "name all defendants" rule was part of the Department of Corrections' internal grievance policies, CMS argued, the PLRA barred Reed-Bey's suit, notwithstanding *Jones v. Bock*. The Department of Corrections, Pramstaller, Russell and Vadlamudi moved for summary judgment under the same theory. The district court granted both motions, and on its own initiative it also dismissed Reed-Bey's claims against DuBuc, Jackson, Nzums and Ingram.

II.

A.

Reed-Bey's appeal presents one question: Did he properly exhaust his administrative remedies despite failing to name a single individual in his initial grievance? If not, the PLRA bars his claim. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the "critical procedural rules" of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance "on the merits" in the first instance. *Woodford*, 548 U.S. at 90, 95 (internal quotation marks

omitted). Under the Department of Corrections' procedural rules, inmates must include the "[d]ates, times, places and names of all those involved in the issue being grieved" in their initial grievance. R.42-6 ¶ T. These rules suggest a straightforward answer to the question presented—"No"—because Reed-Bey did not identify the "names of all those involved in the issue being grieved."

But this case comes with a twist. Officials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address Reed-Bey's grievance on the merits. That makes a difference. The point of the PLRA exhaustion requirement is to allow prison officials "a fair opportunity" to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court. *Woodford*, 548 U.S. at 94–95; *see Porter v. Nussle*, 534 U.S. 516, 525 (2002). Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers these objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process. *See Woodford*, 548 U.S. at 94–96.

Yet the equation changes when the State does not enforce its own rules. When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we. *See Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 891 (6th Cir. 2009). In that setting, the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar? The rules serve the *State's* interests: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved and its interest in deciding when to waive or enforce its own rules. And the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim.

At least three circuits have come to the same conclusion. *See Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (overlooking the untimeliness of a grievance, over the objection of the defendants, where prison officials reviewed grievance on the merits); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004) (same), *abrogated on other grounds by Jones*, 549 U.S. 199; *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) (overlooking failure to file grievance with the proper officials, over the objection of the defendants, where officials ultimately reviewed grievance on the merits). No circuit to our knowledge has come to a different conclusion.

This approach also parallels the rules for "the similar statutory scheme governing habeas corpus," *Jones*, 549 U.S. at 212. *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (drawing the same analogy). In habeas, "a procedural default does not bar consideration of a federal claim . . . unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar," or it is otherwise clear they did not evaluate the claim on the merits. *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal quotation marks omitted); *see Coleman*, 501 U.S. at 735–36. Exhaustion and procedural default principles in federal habeas, as in the PLRA, serve many of the same goals: to conserve scarce judicial resources, to avoid needless federal judicial decisions and above all to give state officials a realistic opportunity to correct their own mistakes before federal courts intervene. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Coleman*, 501 U.S. at 731–32. It makes considerable sense to adopt similar approaches in addressing similar concerns under the two regimes. *Cf. Harris*, 489 U.S. at 263.

The Department of Corrections argues that this approach overlooks the key insight of the Supreme Court's decision in *Woodford*: If courts do not penalize inmates for ignoring grievance policies, they will reward inmates for failing to give prison officials "a fair opportunity to correct their own errors." 548 U.S. at 94–95. But our decision by no means encourages inmates intentionally to default their grievances. *See id.* at 95–96. We still will honor procedural rules that prison officials themselves enforce, and that reality should give inmates all the incentive they need to seek—and obtain—merits review of their grievances.

Enforcing internal prison rules even when prison officials do not and even when they proceed to address a grievance on the merits takes *Woodford* one step too far.  It would do more than ensure that prison officials get the first shot at correcting their own mistakes; it would give their merits-based grievance denials undeserved insulation from federal judicial review. Under this approach, we could never review, for example, whether the Department of Corrections properly concluded that Reed-Bey's allegations of unconstitutional treatment lack merit.  The Department would dismiss any subsequent grievance related to his 2005 medical care as untimely, because he has only seven business days after an incident to file a grievance.  We then would dismiss any future § 1983 suits related to his 2005 medical treatment due to improper exhaustion.  *See* 42 U.S.C. § 1997e(a).

What interest such an approach would advance is hard to see.  It would do nothing to further any of the goals of proper exhaustion under the PLRA.  It would not incentivize good-faith efforts at exhaustion.  *See Woodford*, 548 U.S. at 90.  It would not avoid otherwise needless interference with prison administration.  *See id.* at 93.  It would not promote efficiency. *See id.* at 89.  And it would not produce an otherwise unavailable record for future judicial proceedings, as future judicial proceedings would be foreclosed and the relevant record already exists. *See Nussle*, 534 U.S. at 525.  We see no benefit to enforcing a procedural bar that the Department of Corrections did not.  We instead conclude that Reed-Bey properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step.

B.

When CMS was the only defendant in the case to file a response merits brief, Reed-Bey asked that we bar the other defendants from filing response briefs and tax his appellate costs against all the defendants.  We deny Reed-Bey's motion to strike any untimely briefs, but he may collect the costs of his appeal in accordance with Appellate Rule 39.

III.

For these reasons, we reverse the district court's summary judgment order in favor of the Department of Corrections, the Bureau of Health Care, Pramstaller, Russell and Vadlamudi; its Rule 12(h)(3) dismissal of DuBuc, Jackson, Nzums and Ingram; and its Rule

12(b)(6) dismissal of CMS. The district court should consider CMS's alternative theory that Reed-Bey failed to plead a viable § 1983 claim on remand.