NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0837n.06

No. 12-1644

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BOBBIE A. MAXWELL, JR., | ) | **FILED** |
| | ) | Sep 19, 2013 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CORRECTIONAL MEDICAL SERVICES, | ) | COURT FOR THE WESTERN |
| INC., et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: BOGGS and WHITE, Circuit Judges, and McCALLA, District Judge.[*]

**JON P. McCALLA, District Judge.** This appeal was brought by Bobbie A. Maxwell, Jr., while an inmate at the Florence Crane Correctional Facility, Michigan Department of Corrections. Maxwell filed a complaint in the United States District Court for the Western District of Michigan, pursuant to 42 U.S.C. § 1983, claiming that private contractors working for the Michigan Department of Corrections violated his Eighth Amendment right against deliberate indifference to his serious medical needs due to denial of hip-replacement surgery and adequate pain medication. Ultimately, all of Maxwell's claims were dismissed either on motions to dismiss or motions for summary judgment. Maxwell appeals the district court's dismissal of his claim against Dr. Keith W. Ivens for denial of hip-replacement surgery in 2007 and his claim against Dr. Bency Mathai for

---

[*]The Honorable Jon P. McCalla, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

denial of pain medication. Maxwell also appeals the district court's denial of his two motions to amend his complaint.

We REVERSE the district court's decision regarding Appellant's claim against Dr. Ivens, and REMAND that claim to the district court for consideration on the merits. We AFFIRM the district court's decision regarding Appellant's claim against Dr. Mathai and the district court's denial of Appellant's two motions to amend his complaint.

## I. BACKGROUND

Plaintiff-Appellant Bobbie A. Maxwell, Jr. ("Appellant" or "Maxwell"), developed pain in both hips during a term of incarceration with the Michigan Department of Corrections ("MDOC") that ended in 2003. After being released in 2003, Appellant consulted a private physician, Dr. Boon Cho Chang ("Dr. Chang"), who recommended surgery after therapy proved ineffective. While Dr. Chang was looking for a specialist to do Appellant's hip surgery, Appellant was again incarcerated in July of 2005. While incarcerated, in "August, 2005, [Appellant] was diagnosed with moderately advanced bilateral hip degenerative changes," and on "November 14, 2007, [Appellant] was diagnosed with bilateral avasular [sic] necrosis of the hips." (R. 1 ¶ 14.) The latter term of incarceration ended during the course of this appeal.

Until April 1, 2009, Defendant-Appellee Correctional Medical Services, Inc. ("Appellee CMS" or "CMS"), a private corporation, was under contract with the MDOC to provide medical services to MDOC inmates. Defendant-Appellee Dr. Keith W. Ivens ("Appellee Ivens" or "Dr. Ivens") was an employee of CMS until December 14, 2007. Defendant-Appellee Dr. Bency Mathai ("Appellee Mathai" or "Dr. Mathai") was also an employee of CMS. Since April 1, 2009,

Defendant-Appellee Prison Health Services, Inc. ("Appellee PHS" or "PHS"), a private corporation, has been under contract with the MDOC to provide medical services to MDOC inmates. The Pain Management Committee is a three-member body and part of the MDOC.

On December 27, 2008, Appellant filed the grievance relevant to this appeal (the "Grievance"). On the Prisoner/Parolee Grievance Form, where the grievant is directed to "[s]tate [the] problem clearly," Appellant wrote: "See: Attached Grievance Statement. In the form of: Administrative Notice. By: Affidavit 2 pages." In the Administrative Notice attached to the Prisoner/Parolee Grievance Form, Appellant stated, in relevant part, that:

> 1. On December 23, 2008, I received verbal confirmation from Sandra K. Powell, R.N., that my request for Special Accomodation [sic], Pain Medication and Hip Replacement surgery forwarded by Hope S. Heebsh-P.A. to C.M.S/U.ofM. [sic] was "Denied" on 10-22-2008, by Corrections Medical Services/U. of M.
> . . . .
>
> 3. Affiant was " [sic] seen by Orthopedic Surgery (Dr. Ikrom) who recomended [sic] referral to U. of M. or St. Joseph for Bilateral Hip Replacement, [sic] This request was 1st. made on 11-14-2007, again on 8-30-2008, by Dr. Darrell L. Brady-M.D., and again by P.A. Hope S. Heebsh on 10-2-2008, with all requests being DENIED.
> . . . .
>
> 5. Correctional Medical Services Staff; Dr. Mathi [sic], and Senior Regional Medical Director, Craig Hutchinson, M.S. are allowing Affiant MAXWELL # 240605 to suffer " . . . Pain needlessly when relief is readily available . . ." [See: Borretti v. Wiscomb, 930 F 2d 1150, [sic] (6th Cir. 1991)].
>
> 6. C.M.S. Staff demonstrated "Deliberate Indifference" to My [sic] medical needs going back to November, 2007, when Dr. Ivens refused to authorize my Hip Replacement Operation.
> . . . .
>
> 8. There is NO legitimate reason to deny Affiant 'Solutional Remedy' i.e. Surgery, Effective Medication, Injections to assist in alleviation of Affiant's [sic] current

> inflection of unnecessary suffering upon Affiant by failure to treat medical needs, which boils down to 'Crule [sic] and Unusual Punishment' and C.M.S. being inconsistant [sic] with contemporary standards of decency, and unnecessary [sic] wanton infliction of pain, In [sic] violation of the Eigth [sic] Amendment, U.S. Constitution. [See: Estelle v. Gamble, 429 U.S. 1331; 97 S ct. [sic] 285; 50 L Ed. 2nd 273 (1976)].

(R. 11-2 at PID 159  60.)

On March 27, 2009, the Grievance was denied after being pursued through all three stages of the grievance process. The final denial of the Grievance stated:

> Grievant alleges he is being denied hip surgery and pain relief associated with his hips.
>
> All relevant information has been reviewed within the electronic medical record. Grievant has had several evaluations, diagnostic testing, x-rays, and specialty consults requested by the Medical Practitioner. Grievant also currently has a treatment plan in place and a re-evaluation has been submitted to the Pain Management Committee. Denial of treatment is not supported by the record. Grievant's request for hip replacement surgery is not medically indicated at this time. Step I and Step II respondents are both affirmed.
>
> Grievance appeal denied.

(R. 11-2 at PID 221.)

On April 26, 2010, Appellant filed the instant complaint. Pursuant to 42 U.S.C. § 1983, Appellant sought injunctive relief and damages because his Eighth Amendment rights had been violated due to "deliberate indifference of [his] medical needs." As relevant to this appeal, Appellant made the following allegations: that, in November 2007, Dr. Ivens denied a recommendation that Appellant receive bilateral hip-replacement surgery because Appellant's "[h]ip problems [are] from pre-existing GSW (gunshot wounds) and other trauma"; that Dr. Mathai denied a request from a

physician's assistant that Appellant receive an MRI examination; and that "CMS and PHS are vicariously liable for the actions of their employees."

On July 2, 2010, Appellees Ivens, Mathai, and CMS filed a motion to dismiss, and on July 7, 2010, Appellee PHS filed a motion to dismiss. On January 18, 2011, the magistrate judge recommended that the claim against Dr. Ivens regarding Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery be dismissed for failure to exhaust administrative remedies; that Appellant stated a claim against Dr. Mathai only for a denial of a recommended MRI examination, which should be dismissed for failure to exhaust administrative remedies; and that the claims against CMS and PHS be dismissed for failure to state a claim.

On March 16, 2011, Appellant filed a motion for leave to file an amended complaint (the "First Motion to Amend"). Appellant requested "leave to file an amended complaint as to [CMS] and [PHS] to specifically allege the polices [sic], practices of [sic] customs of each of those defendants." Appellant attached his proposed Amended Complaint (the "First Proposed Amended Complaint") to the First Motion to Amend.

On April 13, 2011, and April 15, 2011, the district court issued orders adopting the magistrate judge's recommendations and denying Appellant's First Motion to Amend. Regarding the First Motion to Amend, the district court found that "[e]ven were the Court to overlook the untimeliness of Plaintiff's motion, and the prejudice resulting therefrom, Plaintiff's attempt to cure the legal deficiencies in his complaint is futile."

On January 6, 2012, and February 10, 2012, pursuant to motions by the remaining defendants, the magistrate judge recommended granting summary judgment against Appellant on

his remaining claims. On March 13, 2012, Appellant filed a second motion for permission to file an amended complaint (the "Second Motion to Amend"), seeking to add Dr. Haresh B. Pandya and Dr. Sylvia McQueen as defendants, reinstate Appellees CMS and PHS as defendants, and reassert the claim against Appellee Ivens regarding Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery.

On May 2, 2012, the district court issued an order adopting the magistrate judge's recommendations and denying the Second Motion to Amend. The district court denied the Second Motion to Amend because it would "prejudice Defendants and unreasonably delay resolution of the claims presently before the Court." On May 2, 2012, the district court entered a Judgment "in favor of Defendants and against Plaintiff."

## II. ANALYSIS

The court addresses, in turn, Appellant's arguments regarding Dr. Ivens's denial of hip-replacement surgery in 2007, Dr. Mathai's denial of pain medication, the First Motion to Amend, and the Second Motion to Amend.

A.     **Appellant Exhausted His Administrative Remedies Regarding Dr. Ivens's 2007 Denial of Appellant's Hip-Replacement Surgery.**

A district court's dismissal of a prisoner's civil-rights claims for failure to exhaust is reviewed de novo. *Risher v. Lappin*, 639 F.3d 236, 239 40 (6th Cir. 2011) (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 993 (6th Cir. 2004)).

42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." As a result, "[t]here is no question that exhaustion is mandatory under the [Prison Litigation Reform Act of 1995] and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

Failure to exhaust is an affirmative defense. *Bock*, 549 U.S. at 216; *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). The defendant, therefore, bears the burden of proof on exhaustion. *Surles*, 678 F.3d at 455.

Appellant challenges the district court's dismissal of his claim against Dr. Ivens for failure to exhaust administrative remedies. The district court held that the Grievance did not give adequate notice that Maxwell was grieving Dr. Ivens's 2007 denial of his hip-replacement surgery. Appellant challenges this holding.

1.      **The Grievance Gave Prison Officials Sufficient Notice that Appellant Was Grieving Dr. Ivens's 2007 Denial of Appellant's Hip-Replacement Surgery.**

Appellant argues that the sixth paragraph of the Grievance gave adequate notice that he was grieving Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery. (Appellant Br. at 21.) The sixth paragraph of the Grievance reads: "C.M.S. Staff demonstrated "Deliberate Indifference" to My [sic] medical needs going back to November, 2007, when Dr. Ivens refused to authorize my Hip Replacement Operation."

The Supreme Court has addressed "how courts determine whether a prisoner has properly exhausted administrative remedies specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." *Bock*, 549 U.S. at 205. The Supreme

Court concluded that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the [Prison Litigation Reform Act of 1995], that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218; *see also Reynolds-Bey v. Harris*, 428 F. App'x 493, 499 (6th Cir. 2011).

Appellant's Grievance was filed pursuant to MDOC Policy Directive 03.02.130 (effective date June 9, 2007) (the "MDOC Grievance Procedures"). According to the MDOC Grievance Procedures, "vague" grievances may be rejected. The MDOC Grievance Procedures do not define "vague" but do give the following indication of what should be included in a grievance: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issued being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included."

"When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). When prison officials decline to enforce their own procedural rules, "the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served." *Id.* As a result, "the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim." *Id.*; *see also Reynolds-Bey*, 428 F. App'x at 502.

In the case presently before this court, the Grievance is not "vague" regarding Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery. The Grievance contained the dates and "names

of all those involved in the issue being grieved." In paragraph three of the Grievance, Appellant stated that Dr. Ikrom recommended the surgery on November 14, 2007: "Affiant was " [sic] seen by Orthopedic Surgery (Dr. Ikrom) who recomended [sic] referral to U. of M. or St. Joseph for Bilateral Hip Replacement . . . on 11-14-2007." In paragraph six of the Grievance, Appellant stated that he was grieving Dr. Ivens's November 2007 denial of hip-replacement surgery as part of his assertion of deliberate indifference: "C.M.S. Staff demonstrated "Deliberate Indifference" to My [sic] medical needs going back to November, 2007, when Dr. Ivens refused to authorize my Hip Replacement Operation." The Grievance is not vague: it is clear that Appellant was grieving Dr. Ivens's denial in November 2007 of Dr. Ikrom's recommendation that Appellant receive bilateral hip-replacement surgery.

Furthermore, while the MDOC Grievance Procedures state that the time of day and location of the incident "are to be included," prison officials did not dismiss the Grievance as it regards Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery because the time of day and location of the incident were not included. In *Reed-Bey*, we refused to dismiss a claim for failure to exhaust administrative remedies despite the fact that the prisoner did not include the "names of all those involved in the issue being grieved," as required by the MDOC grievance procedures in effect at the time the grievance was filed. *Reed-Bey*, 603 F.3d at 325 26. In that case, the prisoner filed a grievance complaining about the lack of follow-up care he received after being treated in an emergency room for a shoulder injury because, while an emergency-room physician recommended that the prisoner see an orthopedic specialist for a shoulder injury within five days, prison officials did not send him to see an orthopedic specialist for more than two months. *Id.* at 323. As in that

case, in the case presently before this Court, Appellant's Grievance gave sufficient notice of the matter being grieved Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery to conclude that "[o]fficials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) [the] procedural failing and chose to address [the] grievance on the merits." *See id.* at 324. Prison officials, therefore, have "had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served," *see id.*, and this Court will not find procedural default regarding Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery.

Finally, unlike the strict adherence to the requirement that prisoners include the names of the defendants in their grievances, *see, e.g.*, *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011), requiring a grievance to state the time of day and location of the incident in this case may raise constitutional concerns. For example, unlike a physical altercation with a guard, there is no indication that Appellant could determine the time of day or location in which Dr. Ivens denied Appellant's hip-replacement surgery in November 2007. Since the MDOC Grievance Procedures require Appellant to grieve Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery, requiring the time of day and location of the incident would deny Appellant the ability to grieve, and by extension to file a claim in federal court regarding, Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery. Strictly interpreted, therefore, the MDOC Grievance Procedures might well be unconstitutional as denying Appellant's First Amendment right to redress grievances. *See Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[P]risoners retain the constitutional right to petition the government for the redress of grievances."). Therefore, such a narrow construction of the MDOC Grievance Procedures would be inappropriate.

### 2. Prison Officials Did Not Dismiss As Untimely Appellant's Grievance As It Regarded Dr. Ivens's 2007 Denial of Appellant's Hip-Replacement Surgery.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' rules that are defined not by the [Prison Litigation Reform Act of 1995], but by the prison grievance process itself." *Bock*, 549 U.S. at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Reynolds-Bey*, 428 F. App'x at 499. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford*, 548 at 95. As a result, "a prisoner must adhere to any time limitations that are part of the institutional grievance policy." *Surles*, 678 F.3d at 455; *see also Reynolds-Bey*, 428 F. App'x at 500.

In the instant case, Appellant correctly points out that, even if the Grievance could have been dismissed as untimely, "nowhere in the grievance process is there a claim that it was untimely." (Appellant Reply Br. at 8.) The MDOC has dismissed grievances similar to that of Appellant because those grievances referred to concerns that were not timely grieved. *See Corr. Med. Servs., Inc.*, 326 F. App'x at 890 (finding untimely a grievance that the MDOC had dismissed because "concerns relating back to 1997 [policies and customs] were not timely" filed in 2006). In the instant case, however, prison officials did not deny the Grievance as untimely. Rather, prison officials denied the Grievance on the merits after it had been pursued through all three stages of the grievance process, concluding that "[a]ll relevant information has been reviewed within the electronic record" regarding Appellant's "alleg[ation that] he is being denied hip surgery and pain relief associated with

his hips." Prison officials, therefore, have "had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served," *see Reed-Bey*, 603 F.3d at 325, and this court will not consider the Grievance untimely as it regards Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery.

In summary, the Grievance gave sufficient notice that Appellant was grieving Dr. Ivens's 2007 denial of Appellant's hip-replacement surgery, and prison officials did not dismiss the Grievance due to procedural default. We reverse the district court's finding that Appellant did not exhaust his administrative remedies regarding his claim against Dr. Ivens for the 2007 denial of hip-replacement surgery, and we remand that claim for consideration on the merits.

**B.      Appellant Did Not State a Claim Against Dr. Mathai for Denial of Pain Medication.**

Appellant asserts that "the claim against Dr. Mathai should not have [sic] dismissed as to the denial of pain medication because the complaint made that claim and it was covered in the grievance." (Appellant Br. at 15.) The only statement in Appellant's brief supporting this assertion is that "the Magistrate Judge erroneously read the complaint against Dr. Mathai as limited to only to [sic] a denial of an MRI whereas the complaint also complains of Dr. Mathai for failure to give adequate pain medication." (*Id.* at 19.) In his brief, Appellant does not indicate where in his Complaint he states a claim against Dr. Mathai for denial of pain medication.

The district court found that the complaint "only asserted a claim against Dr. Mathai for denial of an MRI examination." Appellant argued before that court that paragraph forty-two of his complaint stated a claim against Dr. Mathai for denial of pain medication because that paragraph stated that Dr. Mathai "did not act to 'optimize pain management.'" The district court rejected this

argument because the language of the complaint actually states that "*the [Pain Management Committee] did not act 'to optimize pain management.'*"

If Appellant did not state a claim against Dr. Mathai for denial of pain medication, whether Appellant properly exhausted his administrative remedies regarding Dr. Mathai's alleged denial of pain medication is irrelevant.

"This court reviews the district court's order granting a Rule 12(b)(6) motion to dismiss de novo." *Dudenhoefer v. Fifth Third Bancorp*, 692 F.3d 410, 416 (6th Cir. 2012).

> In assessing a complaint for failure to state a claim, we must construe the complaint in the light most favorable to the plaintiff, accept all well pled factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Taken in the light most favorable to Appellant, the Complaint fails to state a claim against Dr. Mathai for denial of pain medication. Paragraph forty-two of the complaint states that Dr. Mathai did not authorize an MRI examination and referred Appellant to the Pain Management Committee "to optimize pain management." (R. 1 ¶ 42(e).) The complaint then alleges that, following Dr. Mathai's recommendation "the [Pain Management Committee] did not act to 'optimize pain management.'" (*Id.* ¶ 42(f).) The complaint, therefore, may allege that the Pain Management Committee denied Appellant pain medication, but it does not allege that Dr. Mathai denied Appellant pain medication. Since Appellant did not state a claim against Dr. Mathai for denial of pain medication, whether Appellant exhausted his administrative remedies regarding that claim is irrelevant.

We affirm the district court's finding that Appellant did not state a claim against Dr. Mathai for denial of pain medication.

**C.      Appellant's First Motion to Amend Was Futile and, Therefore, Properly Denied.**

Appellant first sought leave to amend his complaint to "specifically allege the polices [sic], practices of [sic] customs of [CMS and PHS]."  The district court denied Appellant's First Motion to Amend because it was untimely, and therefore prejudicial, and because it was futile:  "Even were the Court to overlook the untimeliness of Plaintiff's motion, and the prejudice resulting therefrom, Plaintiff's attempt to cure the legal deficiencies in his complaint is futile" because the "allegations in Plaintiff' [sic] proposed amended complaint . . . fail to 'raise a right for relief above the speculative level.'"

"We review the denial of a motion for leave to amend for abuse of discretion, except when the denial was due to futility, in which case we review de novo."  *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  "Any error in denying a motion to amend is subject to harmless error analysis."  *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 114 (6th Cir. 2009) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).  An abuse of discretion in denying a motion to amend "amounts to harmless error where the proposed amendment would have been futile."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (internal citation and quotation marks omitted).  To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level and to state a claim

to relief that is plausible on its face." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Regarding private contractors employed by a state such as CMS and PHS, "liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (2012); *see also Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (recognizing that *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), extends to private corporations as well as municipal corporations). "Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy." *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 636 (6th Cir. 2012) (internal quotation marks omitted).

Appellant's First Proposed Amended Complaint was futile because it did not sufficiently plead a cause of action against CMS or PHS. Appellant argues that: "The proposed amended complaint alleged the policies, practices, and customs against CMS and PHS in paragraphs 37 and 46. What these policies, practices, and customs caused to plaintiff are alleged in paragraphs 38 and 47." The only indication in paragraphs thirty-eight and forty-seven that the policies of CMS and PHS were the "'moving force' behind the violation of the plaintiff's constitutional rights" is the following statement: "These policies, practices, and customs resulted in Plaintiff suffering almost

constant pain for the entire time of the most recent incarceration." This court, however, "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n*, 583 F.3d at 903 (citation omitted) (internal quotation marks omitted). As a result, Appellant's conclusory allegation that CMS and PHS policies caused the violation of his constitutional right does not "state a claim to relief that is plausible on its face." *See Keys*, 684 F.3d at 608.

Appellant also argues that the First Proposed Amended Complaint "could have been . . . amended" to state a claim and that "[l]eave to amend should only be denied if there are [sic] no set of facts which would constitute a valid claim." (Appellant Br. 33.) The no-set-of-facts standard, however, was "retired" by the Supreme Court in *Twombly*. *Iqbal*, 556 U.S. at 670, 678 80. As stated above, Appellant's argument fails under current pleading standards.

In his reply brief, Appellant also argues that "[t]he policy to deny surgery because of a claim that the need arose due to a condition suffered before incarceration is clearly an alleged unconstitutional policy expressly followed by Defendant Ivens." (Appellant Reply Br. at 11.) As stated in the First Proposed Amended Complaint, however, the policy referenced by Appellant allowed employees to exercise discretion: "The custom, practice, or policy *to consider* whether [sic] prisoner had the condition prior to incarceration as a reason to not approve needed surgery." (R. 35-2 at PID 715, 720 (emphasis added).) While Appellant alleged that Dr. Ivens denied the 2007 request for hip-replacement surgery because the condition was "pre-existing," Appellant did not allege that Dr. Ivens was "'responsible for establishing final [corporate] policy respecting such activity.'" *See Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc) (quoting *Pembaur*

*v. City of Cincinnati*, 475 U.S. 469, 483 (1986)); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005). Regarding the policy of considering whether a condition was pre-existing, the First Proposed Amended Complaint did not plead a necessary element of the claim, so it does not "state a claim to relief that is plausible on its face." *See Keys*, 684 F.3d at 608 (quoting *Twombly*, 550 U.S. at 570).

In summary, because the First Proposed Amended Complaint did not sufficiently plead a cause of action against CMS or PHS, it was futile. We affirm the district court's denial of the First Motion to Amend.

**D.      Regarding the Second Motion to Amend, Appellant Did Not Show Good Cause and Allowing the Amendment Would Have Been Prejudicial to the Nonmoving Parties.**

In the case presently before this court, it is asserted that the district court abused its discretion by denying Appellant's Second Motion to Amend pursuant to Federal Rule of Civil Procedure 15(a) without first considering Federal Rule of Civil Procedure 16(b). The court finds, however, that any abuse of discretion by the district court was harmless error in any event. There was no showing of good cause as required by Rule 16(b), and the district court properly found prejudice pursuant to Rule 15(a). Moreover, there would be substantial prejudice to the other parties. Appellant's counsel filed the Second Motion to Amend more than three months after the deadline for completing discovery, and both the Appellant and Appellee PHS argue that they would have had to reopen discovery (*see* Appellant Br. 24; Appellee PHS Br. 19). The district court denied Appellant's Second Motion to Amend because "Plaintiff waited to attempt to remedy [the legal deficiencies in his Complaint] until after the Magistrate Judge recommended dismissal of all remaining claims. .

. . [Permitting the amendment] under these circumstances would prejudice Defendants and unreasonably delay resolution of the claims presently before the Court."

The district court having properly found prejudice pursuant to Rule 15(a), we affirm the district court's denial of the Second Motion to Amend.

### III. CONCLUSION

For the reasons stated, we REVERSE the district court's decision that Appellant did not properly exhaust his administrative remedies regarding his claim against Dr. Ivens for denial of hip-replacement surgery in 2007, and we REMAND that claim to the district court for consideration on the merits. We AFFIRM the district court's decision that Appellant did not state a claim against Dr. Mathai for denial of pain medication. We AFFIRM the district court's denials of Appellant's motions to amend.