SCIRICA, Circuit Judge, concurring in part and dissenting in part
 

 I join the Majority's thoughtful analysis of Rinaldi's Federal Tort Claims Act claim and exhaustion of his First Amendment claim under the Prison Litigation Reform Act (PLRA). I write separately on the PLRA's exhaustion requirement, 42 U.S.C. § 1997e(a), as it relates to Rinaldi's Eighth Amendment claim.
 

 Rinaldi-a federal inmate-alleges that prison officials unconstitutionally retaliated against him by forcing him to cell with an inmate who had threatened to kill him.
 
 See
 
 U.S. Const. amends. I, VIII. Despite conceding his failure to comply with applicable administrative remedy procedures as required by § 1997e(a), Rinaldi invokes separate reasons why his First and Eighth Amendment claims may be deemed exhausted and considered by the District Court.
 
 [1]
 
 As to Rinaldi's First Amendment claim, I agree with my colleagues that the serious threats of retaliation Rinaldi has alleged call into question the availability of exhaustion. But I believe the Supreme Court's jurisprudence in
 
 Ross v. Blake
 
 , --- U.S. ----,
 
 136 S.Ct. 1850
 
 ,
 
 195 L.Ed.2d 117
 
 (2016), and
 
 Woodford v. Ngo
 
 ,
 
 548 U.S. 81
 
 ,
 
 126 S.Ct. 2378
 
 ,
 
 165 L.Ed.2d 368
 
 (2006), counsels a different result in Rinaldi's Eighth Amendment claim.
 

 The Supreme Court has strictly interpreted § 1997e(a), and the Court's most recent analysis of exhaustion in
 
 Ross
 
 counsels against a broad articulation of a merits exception to proper exhaustion. I recognize the well-established exceptions to exhaustion in habeas corpus and administrative law. But in
 
 Ross
 
 , the Court made clear that the PLRA's statutory exhaustion provision "stands on different footing" from judge-made exhaustion doctrines.
 
 136 S.Ct. at 1857
 
 . Looking to the history and purposes of the PLRA's statutory exhaustion requirement, I believe exhaustion under the PLRA requires the substance of a
 grievance be considered on the merits at each available step of the administrative review process. Because Rinaldi failed to present his Eighth Amendment claim until midway through the administrative review process, the District Court was correct to dismiss the claim on exhaustion grounds.
 

 I.
 

 As the Majority Opinion explains, the United States Bureau of Prisons (BOP) has a multi-tiered administrative remedy program. To exhaust administrative remedies, an inmate must first file an informal remedy request through an appropriate institution staff member via a BP-8 form.
 
 See
 

 28 C.F.R. § 542.13
 
 . If the inmate is not satisfied with the informal remedy response, he is required to address his complaint at the institutional level with the Warden via a BP-9.
 
 See
 
 § 542.14. If the inmate is dissatisfied with the Warden's response, he may then appeal to the Regional Director via a BP-10.
 
 See
 
 § 542.15. And if dissatisfied with the Regional Director's response, the inmate must appeal to the General Counsel via a BP-11.
 
 See
 

 id
 
 . Once an inmate receives a response to his appeal from the General Counsel, after filing the administrative remedy request at all levels, his administrative remedies are deemed exhausted.
 
 [2]
 

 See
 
 id.
 

 Here, Rinaldi filed an informal remedy request on January 29, 2012, claiming to have been assaulted by a previous cellmate. Rinaldi requested that the institution discontinue its practice of forcing inmates to cell together regardless of compatibility because "[f]orced double celling creates a hostile environment and increases the incidence of assaults." JA 164. The informal request was denied and Rinaldi filed Request for Administrative Remedy #675165 (BP-9). This request was denied by the Warden on the grounds that "[a]ll inmates are screened for compatibility prior to placement." JA 165.
 

 Rinaldi appealed to the Northeast Regional Office. At this stage in the institutional review process (BP-10), Rinaldi introduced a new claim that, on February 2, 2012, he was celled with an inmate who had threatened to kill him. Rinaldi framed this as evidence that the Warden's reason for denying his remedy request-that inmates are screened for compatibility-was untrue, noting he had provided his case manager with the names of other inmates he "would like to cell with." JA 167. The Regional Office denied his appeal, reasoning that inmate compatibility is considered and there was "no record of [Rinaldi] being assaulted by [his] previous or current cellmate." JA 168. Rinaldi then appealed to the General Counsel, who denied the appeal and closed the case with the code "DNY."
 

 Thereafter, Rinaldi filed suit in federal court, proceeding
 
 pro se
 
 . As relevant here, Rinaldi alleged that being forced to cell with an inmate who had threatened to kill him violated his Eighth Amendment rights. The District Court dismissed the claim for Rinaldi's failure to exhaust because the BOP's regulations prohibit an inmate from raising issues for the first time on appeal.
 
 See
 

 28 C.F.R. § 542.15
 
 (b)(2). Rinaldi was permitted 30 days to file an amended complaint but instead filed a motion for reconsideration, which the court denied. Upon that denial, Rinaldi filed this timely appeal.
 

 Now represented by counsel, Rinaldi concedes procedural error because he never presented his current claim to the institution (BP-8 and BP-9 levels).
 
 [3]
 
 Indeed, Rinaldi has never claimed that he is pursuing on appeal the claim he raised at all levels of administrative review, namely that the institution should screen for compatibility because forced double celling increases the likelihood of assaults. Now, however, Rinaldi alleges that his Eighth Amendment rights were violated when, on February 2, 2012, he was celled with an inmate who had threatened to kill him and appeals the District Court's decision that this specific allegation was not exhausted. Rinaldi argues the District Court erred in dismissing this claim because the Regional Director's response (BP-10) addressed on the merits both the allegation he was assaulted by a previous cellmate and the allegation he was threatened by his subsequent cellmate.
 

 II.
 

 My colleagues conclude Rinaldi's Eighth Amendment claim was exhausted because, even though he raised its factual predicate for the first time midway through the grievance process, his grievance was denied on the merits at the highest level. I disagree. The Supreme Court's most recent analysis of the PLRA's mandatory exhaustion requirement, in
 
 Ross
 
 , did not decide the question we face today. But
 
 Ross
 
 did signal the Court's continued reluctance to tolerate broad exceptions to the PLRA's statutory exhaustion requirement.
 

 Moreover, the Supreme Court explained in
 
 Ross
 
 that, under the PLRA, the question of exhaustion "in all cases is one of statutory construction."
 
 136 S.Ct. at
 
 1858 n.2. The statute's origins counsel that the substance of a grievance must be addressed at every available level of the administrative review process. So too does the Supreme Court's construction of § 1997e(a) 's text and purpose.
 
 Woodford
 
 drew on principles of habeas and administrative law, but, as described below, this does not support a broad interpretation of a merits exception to proper exhaustion.
 
 [4]
 

 A.
 

 Central to the PLRA's effort to "reduce the quantity and improve the quality of prisoner suits" was its exhaustion requirement.
 
 Porter v. Nussle
 
 ,
 
 534 U.S. 516
 
 , 524,
 
 122 S.Ct. 983
 
 ,
 
 152 L.Ed.2d 12
 
 (2002). Applicable "irrespective of the forms of relief sought and offered through administrative avenues,"
 
 Booth v. Churner
 
 ,
 
 532 U.S. 731
 
 , 741 n.6,
 
 121 S.Ct. 1819
 
 ,
 
 149 L.Ed.2d 958
 
 (2001), the PLRA's exhaustion requirement was designed to strengthen the "weak" exhaustion provision of its predecessor-the Civil Rights of Institutionalized Persons Act (CRIPA),
 
 see
 

 Porter
 
 ,
 
 534 U.S. at 523
 
 ,
 
 122 S.Ct. 983
 
 ;
 
 see also
 

 Ross
 
 ,
 
 136 S.Ct. at 1857-58
 
 (discussing how "the history of the PLRA underscores the mandatory nature of its exhaustion regime"). The Supreme Court has "reject[ed] every attempt to deviate ... from [ § 1997e(a) 's] textual mandate."
 
 Ross
 
 ,
 
 136 S.Ct. at 1857
 
 .
 

 Most recently, in
 
 Ross
 
 , the Court considered a "special circumstances" exception
 to the exhaustion requirement.
 

 Id.
 

 at 1856
 
 . Acting on the premise that the PLRA's exhaustion requirement was "not absolute," the Fourth Circuit found a prisoner's failure to comply with applicable procedural requirements could be excused where the prisoner reasonably believed administrative remedies were exhausted.
 

 Id.
 

 The Court rejected the special circumstances exception, explaining that such an approach, "if applied broadly, would resurrect CRIPA's scheme, in which a court could look to all the particulars of a case to decide whether to excuse a failure to exhaust available remedies."
 

 Id.
 

 at 1858
 
 .
 

 In rejecting the special circumstances test, the Court clarified that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."
 

 Id.
 

 at 1857
 
 . Thus, while "an exhaustion provision with a different text and history from § 1997e(a) might be best read to give judges the leeway to create exceptions or to itself incorporate standard administrative-law exceptions,"
 

 id.
 

 at 1858 n.2, courts must look only to the statute, "using ordinary interpretive techniques,"
 

 id.
 

 , when considering whether a grievance has been exhausted. Looking to the PLRA's history, it appears applying broad exceptions from habeas and administrative law to § 1997e(a) would be contrary to the "invigorated" exhaustion scheme,
 
 see
 

 Porter
 
 ,
 
 534 U.S. at 524
 
 ,
 
 122 S.Ct. 983
 
 , created by Congress and enforced by Supreme Court precedent.
 

 B.
 

 Requiring a decision on the merits at each available stage of the administrative process is, moreover, consistent with how the Supreme Court has construed § 1997e(a) 's text and the purposes of the PLRA's exhaustion provision.
 

 In
 
 Woodford
 
 , the Court interpreted § 1997e(a) to require "proper exhaustion."
 
 548 U.S. at 84
 
 ,
 
 126 S.Ct. 2378
 
 . This "means using all steps that the agency holds out, and doing so
 
 properly
 
 (so that the agency addresses the issues on the merits)."
 

 Id.
 

 at 90
 
 ,
 
 126 S.Ct. 2378
 
 (internal quotations marks and citation omitted). The Court explained that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."
 

 Id.
 

 at 95
 
 ,
 
 126 S.Ct. 2378
 
 .
 

 This construction would appear to be inconsistent with a broad merits exception. This is not a case where the grievance bears some procedural defect, but the substance of the grievance is nevertheless considered at all administrative steps (for example, the initial filing was untimely or an appeal deadline was missed but these errors were overlooked). In such a case, the prisoner has used all steps the agency holds out, complying with the agency's "critical rules," and the administrative remedy system functions effectively as if no defect were present. But here, Rinaldi raised the factual basis for his current Eighth Amendment claim only midway through the grievance process.
 

 As for the PLRA, we have described the "three interrelated objectives" of exhaustion as follows: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."
 
 Spruill v. Gillis
 
 ,
 
 372 F.3d 218
 
 , 230 (3d Cir. 2004). The Supreme Court has reasoned, in
 
 Woodford
 
 , that exhaustion gives the agency "an opportunity
 to correct its own mistakes with respect to the programs it administers,"
 
 548 U.S. at 89
 
 ,
 
 126 S.Ct. 2378
 
 , and promotes efficiency-"[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction,"
 

 id.
 

 at 95
 
 ,
 
 126 S.Ct. 2378
 
 . These purposes are best served by requiring that the substance of the grievance be addressed at every available stage of the administrative process.
 

 Take, for example, the goal of developing an administrative record. If the procedural defect is that an inmate interjects a claim at the final stage of the BOP's remedy process, then a denial with the code "DNY" would suffice to have exhausted that claim on the merits.
 
 [5]
 
 In this scenario there is no creation of an administrative record. The administrative record is also not fully developed where, as here, a claim is interjected midway through the BOP's review process. As for compliance with critical procedural rules, there is less incentive for a prisoner to pursue separate grievances through all stages of review if a claim (or, as here, facts supporting a different claim) can instead potentially be added at the final hurdle. Finally, requiring a grievance to have been considered on the merits at all available stages of review makes it more likely a particular institution will have the full opportunity to address and correct a grievance because the institution itself will be put on notice first. The first step of the BOP's remedy program is designed to allow staff an opportunity to "informally resolve the issue
 
 before
 
 an inmate submits a Request for Administrative Remedy."
 
 28 C.F.R. § 542.13
 
 (a) (emphasis added).
 
 [6]
 

 C.
 

 Analogies to well-established exceptions in habeas and administrative law are useful. But the Supreme Court has not imported all of these principles into the PLRA's exhaustion regime.
 
 [7]
 
 Further still, these exceptions are judge-made.
 
 [8]
 
 To the
 extent they apply in the PLRA context,
 
 Ross
 
 requires consideration of § 1997e(a) 's origins, text, and purpose. As noted, I believe these considerations counsel that the substance of a grievance must have been considered on the merits at each available level of administrative review.
 

 III.
 

 Notably, most of our sister circuits to consider the issue prior to
 
 Ross
 
 addressed grievances the substance of which had proceeded through each step of the administrative process.
 
 See, e.g.
 
 ,
 
 Hill v. Curcione
 
 ,
 
 657 F.3d 116
 
 , 125 (2d Cir. 2011) (concerning a late initial filing accepted and decided on the merits);
 
 Maddox v. Love
 
 ,
 
 655 F.3d 709
 
 , 721 (7th Cir. 2011) ("Maddox's grievance was rejected on the merits at every stage of review without any indication from prison officials that it was procedurally deficient.");
 
 Reed-Bey v. Pramstaller
 
 ,
 
 603 F.3d 322
 
 , 325 (6th Cir. 2010) (addressing an inmate's failure to name a single individual in his initial grievance);
 
 Ross v. Cty. of Bernalillo
 
 ,
 
 365 F.3d 1181
 
 , 1186 (10th Cir. 2004) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper.").
 
 [9]
 
 This is also true of our decision in
 
 Spruill
 
 .
 
 See
 

 372 F.3d at 232
 
 (focusing on the fact that the prison's initial grievance review cured the inmate's procedural defect).
 

 In fact, the Ninth Circuit in
 
 Reyes v. Smith
 
 expressly qualified its holding on this point: "we hold that a prisoner exhausts 'such administrative remedies as are available,' under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the
 
 grievance at each available step of the administrative process
 
 ."
 
 810 F.3d 654
 
 , 658 (9th Cir. 2016) (internal citation omitted) (emphasis added). The Eighth Circuit also based its holding in
 
 Hammett v. Cofield
 
 on the fact that the inmate had "pursued the[ ] grievances through all three steps of the process" and his grievance appeals were denied on the merits.
 
 681 F.3d 945
 
 , 948 (8th Cir. 2012). The court noted that when a grievance has proceeded through all steps, notwithstanding an initial procedural error, "[a] complete administrative record exists, and a reviewing court will have the benefit of the agency's institutional perspective."
 

 Id.
 

 at 947-48
 
 . This reasoning does not hold true where a claim has been added midway through the remedy process.
 

 IV.
 

 Exhaustion provisions, like § 1997e(a), are designed "to give the agency a fair and full opportunity to adjudicate [party] claims."
 
 Woodford
 
 ,
 
 548 U.S. at 90
 
 ,
 
 126 S.Ct. 2378
 
 . In the PLRA context, I believe this requires the substance of a grievance
 to have been considered at every level of available administrative review. For this reason, Rinaldi did not exhaust his Eighth Amendment claim and I respectfully dissent from that holding of the Majority Opinion.
 

 In addition to the grievances at issue in this appeal, Rinaldi asserts he filed over 50 administrative remedy requests while housed at USP-Lewisburg. Based on some of these remedy requests, Rinaldi's complaint alleged other civil rights violations related to his confinement, including that: his Fifth and Eighth Amendment rights were violated when officials denied him access to adequate recreation; the denial of his ability to worship in congregation violated his right to religious freedom; and being forced to have psychological review conducted through his cell door resulted in him being denied proper medical care and violated his right to confidentiality with his doctor.
 

 The District Court found these claims administratively exhausted but concluded Rinaldi had failed to state claims for inadequate access to adequate recreation and inadequate psychological treatment. Rinaldi does not appeal that decision. Furthermore, as noted by the Majority, our decision in
 
 Mack v. Warden Loretto FCI
 
 ,
 
 839 F.3d 286
 
 , 305 (3d Cir. 2016) forecloses Rinaldi's Free Exercise claim and I agree Rinaldi should not be permitted leave to amend his Religious Freedom Restoration Act claim because this request was raised for the first time in Rinaldi's Reply Brief.
 

 An exception to the initial filing requirement at the institutional level exists "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution."
 
 28 C.F.R. § 542.14
 
 (d)(1). But this exception is relevant only to Rinaldi's First Amendment claim.
 

 As noted, at the BP-8 and BP-9 levels, review takes place within the specific institution. At the BP-10 and BP-11 levels, review takes place at the regional and national level.
 

 Woodford's
 
 reference to our decision in
 
 Spruill v. Gillis
 
 ,
 
 372 F.3d 218
 
 (3d Cir. 2004), does not support the proposition that exhaustion is satisfied where a grievance is addressed on the merits only at the highest level of review. The Court was citing our first holding in
 
 Spruill
 
 -that the PLRA's exhaustion provision included a procedural default component.
 
 See
 

 Woodford
 
 ,
 
 548 U.S. at 87
 
 ,
 
 126 S.Ct. 2378
 
 (citing
 
 Spruill
 
 ,
 
 372 F.3d at
 
 230 ).
 

 The status codes used by the BOP relating to administrative remedies distinguish between appeals that are closed on the merits and those that are rejected.
 

 The Majority asserts its approach "avoids subjecting prisoners and prison administrators alike to a futile exercise and provides judicial review of the prison's final decision on the merits." Maj. Op. at 272. But the PLRA was enacted to "improve the quality of prisoner suits,"
 
 Porter
 
 ,
 
 534 U.S. at 524
 
 ,
 
 122 S.Ct. 983
 
 , and its primary vehicle for doing so was to require proper exhaustion,
 
 see
 

 Woodford
 
 ,
 
 548 U.S. at 90
 
 ,
 
 126 S.Ct. 2378
 
 .
 

 As Rinaldi concedes, his Eighth Amendment claim should have been filed separately under the BOP's regulations because it involves a separate issue.
 
 See
 
 28 C.F.R. 542.14(c)(2) ; 542.15(b)(2). Indeed, Rinaldi never presented his Eighth Amendment claim at the institutional level-that is, to the prison officials at Lewisburg. When a grievance such as Rinaldi's is not presented at the institutional level, prison officials are stripped of the opportunity to address prisoner grievances within their institution. And we-as an eventual reviewing court-lose the benefit of the expertise and specialized knowledge possessed by those who staff the institution. Such an approach does not serve to "improve the quality" of suits before us.
 

 For example, in
 
 Woodford
 
 , the Court rejected a comparison between the Antiterrorism and Effective Death Penalty Act's (AEDPA) tolling provision and the PLRA, noting "the AEDPA and PLRA provisions deal with separate issues: tolling in the case of the AEDPA and exhaustion in the case of the PLRA,"
 
 548 U.S. at 100
 
 ,
 
 126 S.Ct. 2378
 
 , and further stated it was "unrealistic to infer from the wording of the PLRA provision that Congress framed and adopted that provision with habeas law and not administrative law in mind,"
 

 id.
 

 at 102
 
 ,
 
 126 S.Ct. 2378
 
 .
 

 As we noted in
 
 Spruill
 
 , "the Supreme Court has consistently located the procedural default component of federal habeas law in the independent and adequate state ground doctrine, a doctrine that, in the habeas context at least, is grounded in concerns of comity and federalism."
 
 372 F.3d at 229
 
 (internal quotation marks and citations omitted). These concerns apply "with greater force to defaults in state
 
 judicial
 
 proceedings than ... to defaults in state
 
 administrative
 
 proceedings,"
 

 id.
 

 at 229
 
 , and this is even more true in the PLRA context where the administrative proceedings are federal.
 

 In the administrative law context, the D.C. Circuit has explained exhaustion is a "judicially-created doctrine ... which permits courts some discretion to waive exhaustion."
 
 Washington Ass'n for Television & Children v. F.C.C
 
 .,
 
 712 F.2d 677
 
 , 682 (D.C. Cir. 1983).
 

 The one exception is
 
 Whatley v. Warden, Ware State Prison
 
 , but even in
 
 Whatley
 
 , the inmate's first informal grievance referred back to an earlier grievance containing the substantive allegations that later formed the basis of his appeals and complaint.
 
 See
 

 802 F.3d 1205
 
 , 1210 (11th Cir. 2015).